UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MAINE COUNCIL OF THE ATLANTIC SALMON FEDERATION,<br>NATURAL RESOURCES COUNCIL OF MAINE,<br>KENNEBEC VALLEY CHAPTER OF TROUT UNLIMITED,<br>and MAINE RIVERS,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE of the NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION (NOAA Fisheries)<br><br>and<br><br>BROOKFIELD RENEWABLE SERVICES MAINE, LLC;<br>BROOKFIELD POWER US ASSET MANAGEMENT, LLC; BROOKFIELD WHITE PINE HYDRO LLC; MERIMIL LIMITED PARTNERSHIP; HYDRO-KENNEBEC, LLC | Case No. 2:15-cv-261-JAW |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

NOW COME all Plaintiffs, as petitioners in the above-captioned matter, by and through undersigned counsel, and hereby respectfully oppose the Defendants' motions to dismiss [ECF Nos. 18 & 19].

This Court does not lack subject matter jurisdiction. In accordance with the United States Supreme Court authority of *Bennett v. Spear*, 520 U.S. 154 (1997), and recent Circuit Court precedent following *Bennett – Dow Agrosciences LLC v. National Marine Fisheries Service*, 637

1

F.3d 259 (4th Cir. 2011) – this Court has subject matter jurisdiction to review the final agency action of the National Marine Fisheries Service ("NMFS")[1] under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.  The two biological opinions in issue (the "Kennebec BiOps," *see* ECF No. 1, Complaint ¶ 2) are final agency action of NMFS, and no provision of the Federal Power Act ("FPA") or any other federal statute divests this Court of jurisdiction to review a final agency decision of NMFS.  *See Friends of Merrymeeting Bay v. United States Dept. of Commerce*, 810 F. Supp. 2d 320, 326 (D. Me. 2011) ("Clear precedent establishes that a biological opinion ('BiOp') represents final agency action by NMFS.") (citing *Dow Agrosciences LLC v. NMFS*, 637 F.3d 259, 261 (4th Cir. 2011)).

By the same token, because there should be no dispute that the Kennebec BiOps constitute final agency action of NMFS (*Bennett v. Spear*, 520 U.S. at 177-78), this lawsuit is ripe.  Indeed, the Federal Defendants' argument that "the LSW BiOp currently has no legal effect" [ECF No. 18 at 19] carries dire ramifications, because the argument would suggest that the Incidental Take Statements ("ITS's") that are the permit results of the Kennebec BiOps [*see* 16 U.S.C. § 1536(b)(4)(iv)], would, by the government's argument, "have no legal effect" and that "it is unknown if  [they] ever will have any legal effect."  ECF No. 18 at 19.  By arguing that the ITS permit has "no legal effect" as a safe harbor for incidental "takes" of endangered species under 16 U.S.C. § 1536(b)(4)(i)-(iv) and § 1536(o)(2), the government seems to make a remarkable concession that the Brookfield Defendants run the risk of violation of the ESA without exemption,

---

[1]For the sake of simplicity, we do not mind following the Defendants in using their reference to NMFS of the National Oceanic and Atmospheric Administration ("NOAA") as the "Federal Defendants" [*see*, *e.g.*, ECF No. 18 at 2 & n.1] in this opposition memorandum, so long as that label is understood to refer to the only named federal governmental agency, National Marine Fisheries Service ("NMFS") as the "consulting agency" in issue under section 7 of the ESA.  Complaint ¶ 14(a).  The "action agency" – the Federal Energy Regulatory Commission ("FERC") – has not been sued and its orders (whether orders entered or to be entered) are not the subject of this suit.  We will refer to the dam owner or licensee Defendants, two of whom were designated the "non-federal representatives" for the section 7 consultation in issue, as the "Brookfield Defendants."

subject to civil and criminal penalty, because they are operating dams which "take" an endangered species and adversely modify critical habitat without "legally effective" incidental take permits. With GOM-DPS of Atlantic salmon on the brink of extinction in the United States, Plaintiffs cannot help but respond with alarm at NMFS's argument that this case is not ripe because the agency's ITS, issued after section 7 consultation, "has no legal effect."  *See* ECF No. 1-1 at pp. 1-2, 64-67 & ECF No. 1-2 at pp. 2, 147-57.  That position is not justified by any governing case precedent certainly after *Bennett v. Spear*, nor any section of the ESA or pertinent regulations.[2]  In the words of the Supreme Court, the BiOps and their accompanying ITS's "alter[] the legal regime" to which both the action agency and all parties are subject.  *Bennett*, 520 U.S. at 169-70.

Finally, Plaintiffs have standing to challenge the Kennebec BiOps under the APA.  Three of the four Plaintiffs (the Natural Resources Council of Maine, the Maine Council of the Atlantic Salmon Federation (by its national affiliate), and the Kennebec Valley Chapter of Trout Unlimited) are signatories to the KHDG Agreement with NMFS and the Brookfield Defendants (as successors to the dam owners and licensees of 1998, when the KHDG Agreement was executed).  The Kennebec BiOps undermine the core purpose of the KHDG Agreement – to restore wild sea-run fish species to the Kennebec River in self-sustaining numbers – and place NMFS out of compliance with the terms of that once historic, comprehensive agreement.  *See* ECF No. 1, Complaint ¶¶ 66-67.  Plaintiffs' collective interest in the final agency action of NMFS contained in the Kennebec BiOps is, alone, enough to sustain any standing objection, whether that interest inures to them as signatories to the KHDG Agreement, or under the ESA.  *See National Wildlife Federation v. National Marine Fisheries Service*, 524 F.3d 917 (9th Cir. 2007) (consolidated appeals of various

---

[2] Indeed, in section 9 enforcement actions for violations of ITS terms, 16 U.S.C. § 1538(a)(1)(B)&(g), defendants to such actions would be unlikely to succeed in arguing that ITS terms "have no legal effect."  16 U.S.C. § 1536(o)(2).  NMFS and the U.S. Fish & Wildlife Service would not, we presume, allow such arguments to gain much of a handhold in such cases.

environmental groups successfully challenging NMFS BiOps as final agency action under the APA). The interest is judicially cognizable under both the ESA and the specific rights of three of the Plaintiffs (each except the now independent Maine Rivers) under the KHDG Agreement. Whether under the KHDG Agreement or based on traditional "injury in fact" analysis (*Bennett*, 520 U.S. at 167-69), the Plaintiffs suffer injury in fact, fairly traceable to the BiOps and ITS's, and which will be redressed by a favorable decision from this Court in reversing the agency's action of issuing flawed BiOps. *Bennett*, 520 U.S. at 162; ECF No. 1, Complaint ¶¶ 3, 12-13. When three of the four Plaintiffs' rights as KHDG Agreement signatories is added to the analysis (the KHDG Agreement was expressly incorporated into dam licenses as a term and condition of operation, Complaint ¶ 3), then it is clear the Plaintiffs have as much direct interest in challenging the legally deficient Kennebec BiOps as would any dam licensee or any other signatory to the KHDG Agreement.

Brookfield Defendants' arguments that FERC is a Rule 19 indispensable party to this action is undermined by case law challenging a biological opinion under the APA without inclusion of the "action agency." *Dow Agrosciences LLC v. National Marine Fisheries Service*, 637 F.3d 259 (4th Cir. 2011). FERC participation in the case is not needed for complete relief. If, as in this case, when those individuals within the consulting agency (NMFS) – together with the non-federal representatives (the Brookfield Defendants) – have acted arbitrarily, capriciously, and contrary to law, the resulting NMFS final agency action is reversed or nullified; no order or decree issues to the action agency, FERC. *See id.* at 267.

Finally, the Brookfield Defendants argue that the complaint fails to state a claim, albeit they do not challenge the complaint on its own terms as a challenge to final agency action under the APA. Four dams completely block the sea-run migrations of anadromous species. The species impacted include a listed endangered species whose population is plummeting, and is currently

4

blocked entirely from accessing critical spawning habitat in the Sandy River – habitat which (the best available science tells us) is the last vestige of hope for restoring an endangered species suffering a precipitous decline in numbers. ECF No. 1, Complaint ¶¶ 26-29. NMFS's solution is to put off a solution to the problem for at least the next five years, and in the meantime place all efforts in an expensive gauntlet of "fish passage" reconstructions that is doubtful even by present best available information to result in an efficacious resolution of recovery and survival. NMFS admits to its inherently contradictory logic within the terms of the BiOps themselves. *Id.* ¶ 32. The "take" in issue is the four dams' collective blocking of an endangered species' access to critical habitat for the species' reproduction – i.e., no one fish will reach the Sandy from below Lockwood during this period of time, and doubtfully ever in numbers that would logically lead to recovery. The result is that NMFS permits in the ITS's, until the year 2020, the incidental "take" of 100% of the declining endangered species that is within the critical habitat area of the activity in issue (the four-dam gauntlet), by barring the species' migration; that "take" is authorized, according to NMFS, in order to put in place a "solution" in 2020 that appears doomed to fail. Like the case of *Conservation Council for Hawaii v. National Marine Fisheries Service*, 97 F. Supp. 3d 1210 (D. Hawaii 2015), an inherent illogic within the biological opinions and ITS's of a consulting agency – a federal agency that should otherwise be taking charge of the problem under its statutory mandate – cannot be ignored beneath a volume of agency paper. *Id.* at 1214.[3]

---

[3] In *Conservation Council for Hawaii* – a case brought in part on the same right of action here (an APA challenge to biological opinions and incidental take statements of NMFS, brought by environmental groups) – the United States District Court for the District of Hawaii recently lamented: "The government actions that are challenged in this case permit the Navy to conduct training and testing exercises even if they end up harming a stunning number of marine mammals, some of which are endangered or threatened. Searching the administrative record's reams of pages for some explanation as to why the Navy's activities were authorized by the National Marine Fisheries Service ('NMFS'), this court feels like the sailor in Samuel Taylor Coleridge's 'The Rime of the Ancient Mariner' who, trapped for days on a ship becalmed in the middle of the ocean, laments, 'Water, water, every where, Nor any drop to drink.'" *Id.*, 97 F. Supp. 3d. 1210, 1214 (D. Hawaii 2015). It is an apt lament for NMFS's decision-making in this case too.

I.      **This Court has subject matter jurisdiction to review NMFS's biological opinions as final agency action, under *Bennett v. Spear*.**

The Defendants' motion to dismiss for lack of subject matter jurisdiction presents what is perhaps the rare occasion when United States Supreme Court precedent squarely answers the question in favor of jurisdiction.  *Bennett v. Spear*, 520 U.S. 154 (1997).  In Bennett, a unanimous Court held that a biological opinion ("BiOp") prepared under the ESA by one federal administrative agency for the use of another constitutes "final agency action" reviewable in federal district court under the Administrative Procedure Act ("APA").

Most remarkable is the Federal Defendants' refusal to cite, let alone attempt to distinguish, the decision of the U.S. Court of Appeals for  the Fourth Circuit, in *Dow Agrosciences LLC v. National Marine Fisheries Service*, 637 F.3d 259 (4th Cir. 2011).  In *Dow Agrosciences*, the Fourth Circuit addressed the precise issue the Defendants raise here – that is, whether the *Bennett* holding adheres when a court of appeals judicial review statute exists *governing only review of decisions by the action agency, not decisions of the consulting agency like NMFS*.  *Dow Agrosciences* held that FIFRA's court of appeals judicial review statute (identical to the judicial review provisions of FERC) did not remove jurisdiction of the district court to review a NMFS BiOp resulting from a section 7 ESA consultation with the Environmental Protection Agency ("EPA").  The rationale of *Dow Agrosciences* controls here, including the key distinctions it makes involving the procedural posture of *City of Tacoma v. FERC*, 460 F.3d 53 (D.C. Cir. 2006).  *Id.* at 268.  As in the *Dow Agrosciences* proceedings, the Federal Defendants here rely heavily on *City of Tacoma*, but fail to acknowledge the key distinction explained by the Fourth Circuit in *Dow Agrosciences*, which is that the *City of Tacoma* matter involved a challenge to *the action agency's* final order in reliance on a BiOp.  *Id.*  Perhaps equally remarkable to the Federal Defendants' decision not to cite or discuss *Dow Agrosciences*, is that all of the arguments that the Federal Defendants make now in an attempt

to oust jurisdiction for review of NMFS final agency action, are the identical arguments that were made by NMFS and rejected by the Fourth Circuit in *Dow Agrosciences*. *Id.* at 264-68.

    **a.**        **NMFS's Kennebec BiOps are final agency action**

At the outset, it is unclear whether Defendants would quibble with the point that the Kennebec BiOps are, indeed, final agency action of NMFS, including the ITS's which are a part of them. 16 U.S.C. 1536(b)(4). They appear to concede this point in arguing the jurisdictional issue in reference to *Bennett*, but then ignore the underpinnings of finality to argue this case lacks "ripeness."

A BiOp is final agency action. *Bennett*, 520 U.S. 154, 177-78 (1997); *Dow Agrosciences*, *supra*, 637 F.3d at 265. Judge Singal in this Court has underscored this view in *Friends of Merrymeeting Bay v. United States Dept. of Commerce*, 810 F. Supp. 2d 320, 326 (D. Me. 2011) citing *Dow Agrosciences* for this same proposition in a case involving NFMS agency action regarding the Worumbo dam: "Clear precedent establishes that a biological opinion ('BiOp') represents final agency action by NMFS." *Id.* (citing *Dow Agrosciences LLC v. NMFS*, 637 F.3d 259, 261 (4th Cir. 2011)). The Kennebec BiOps are final agency action here because they are the "consummation of [NMFS's] decision making process" and have "direct and appreciable legal consequences." *Bennett* 520 U.S. at 177-78 (1997); *Dow Agrosciences*, 637 F.3d at 264. They are "distinct final agency actions," *Dow Agrosciences*, 637 F.3d at 268, from any final order of FERC. NMFS's work in this very case as "the consulting, specialist agency" (*id.* at 265) under section 7 of the ESA, and the resulting safe harbors of the BiOps and ITS's, had also been advanced by the dam owners in part as a basis to dismiss earlier actions against them in this Court, alleging violation of the ESA. *Friends of Merrymeeting Bay v. Nextera Energy Resources, LLC*, 2013 WL 1835379, * 2 (D. Me. 2013). But most importantly – especially in light of this prior litigation which had alleged unauthorized "take" under section 9 of the ESA – the "legal consequence" of the Kennebec BiOps

currently is to safeguard any person (the dam owners and the action agency) from a continuing

violation of the ESA for knowingly "taking" endangered species and adversely modifying critical

habitat without incidental take authorization.  16 U.S.C. § 1536(o)(2).  As the *Dow Agrosciences*

case explained, in quoting the pertinent provisions of *Bennett*:

> [The action agency] runs a substantial risk if its (inexpert) reasons turn out to be
> wrong. A Biological Opinion of the sort rendered here alters the legal regime to
> which the action agency is subject.... [T]he Biological Opinion's Incidental Take
> Statement constitutes a permit authorizing the action agency to "take" the
> endangered or threatened species so long as it respects the Service's "terms and
> conditions."  The action agency is technically free to disregard the Biological
> Opinion and proceed with its proposed action, but it does so at its own peril (and that
> of its employees) for "any person" who knowingly "takes" an endangered or
> threatened species is subject to substantial civil and criminal penalties, including
> imprisonment.

*Id.* at 265 (quoting *Bennett* 520 U.S. at 169-70).  Applying *Bennett*, as in *Dow Agrosciences*, this

Court should readily conclude that NMFS's Kennebec BiOps were final agency action.

> **b.  As the final agency action of NMFS, judicial review of the Kennebec BiOps
> now in the district court is authorized by the APA.**

Section 704 of the APA provides that "final agency action for which there is no other

adequate remedy in a court [is] subject to judicial review."  5. U.S.C. § 704.[4]  The Defendants' main

argument is that the FPA provides another adequate remedy in a court for review of the BiOps.  But

---

[4] Plaintiffs do not bring this case as a citizens' suit under section 11 of the ESA.  16 U.S.C. § 1540(g).  The
reference to section 1540(g) in paragraph 15 of the Complaint was not intended to raise that prospect, but to
support the allegation that the district courts have jurisdiction over federal consulting agencies'
administration of the ESA.  Here, as argued above, the Brookfield Defendants rely upon the terms and
conditions of the Kennebec BiOps and ITS's as their safe harbor exceptions for takings that occur by
operation of the dams (*see* 16 U.S.C. § 1536(o)(2)).  Unless the deficiencies in the BiOps and ITS's are
themselves challenged, as in this case, those terms and conditions of the safe harbor remain.  Since this case
is not postured as a citizen suit, the Brookfield Defendants' arguments that the matter should be dismissed
based on the 60-day presuit notice provisions are inapplicable.  "Nothing in the ESA's citizen-suit provision
expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a
purpose to do so."  *Bennett*, 520 U.S. at 175.  Although there were substantive presuit correspondences and
meetings between Plaintiffs' representatives and NMFS, taking place more than 60 days from suit
commencement in this case, Plaintiffs do agree such communications should not qualify as the 60-day notice
under section 1540(g)(2)(A) for a citizens' suit under section 11, were this action intended as such.

that argument is not supported by the plain language of the FPA, just as *Dow Agrosciences* found that an identical judicial review provision of FIFRA does not provide "*statutory* support for an argument that a BiOp issued by the Fisheries Service can be subject to review as part of the FIFRA Administrator's decision." *Dow Agrosciences*, 637 F.3d at 265 (emphasis in original). Thus, while noting that the Defendants here do not appear to quote the relevant language of the FPA provision, the language in issue is virtually identical to the court of appeals judicial review provision of FIFRA in issue in *Dow Agrosciences*, and provides that: "Any party to a proceeding *under this chapter* [Chapter 12, Federal Regulation and Development of Power – *not* Chapter 35 of the ESA] aggrieved by an order *issued by the Commission in such proceeding* may obtain a review *of such order* in the United States Court of Appeals for any circuit wherein the licensee or public utility *to which the order relates* is located or has its principal place of business,. . . ." 16 U.S.C. § 825*l*(b) (emphasis added). The Kennebec BiOps are final agency orders of NMFS, not FERC. The plain language of the FPA does not lend statutory support to Defendants' exclusive jurisdiction argument.

There is also "a strong presumption that Congress intends to allow for judicial review of final agency actions," *Dow Agrosciences*, 637 F.3d at 267 (citing *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670 (1986)). In construing statutory judicial review provisions, the United States Supreme Court has required "clear and convincing evidence" that Congress intended to restrict judicial review. *Id.* (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 141 (1967)). The plain language of FERC's judicial review provision does not contain clear and convincing evidence that Congress intended the court of appeals review provision in the FPA to govern review of a BiOp issued by different agency, within a separate Department (NMFS is in the Department of Commerce, 16 U.S.C. § 1532(15)). FERC is an independent regulatory agency within the Department of Energy, see 42 U.S.C. §§ 7134 & 7172(a)(1)(A). No reading of the Department of Energy Organization Act of 1977, which in part renamed the Federal Power Commission to the

Federal Energy Regulatory Commission and preserved its independent status within the Department of Energy, suggests that Congress intended court of appeals review provisions applicable to FERC dam licensing decisions to restrict judicial review of final agency actions by other agencies, within other departments.

Nor is this challenge to the adequacy of the Kennebec BiOps an issue "inherent" to FERC's orders, or eventual orders, on dam license alterations under the FPA.  *Dow Agrosciences*, 637 F.3d at 265.  The same reasons for this conclusion are present in this case, as in *Dow Agrosciences*.  The Kennebec BiOps have "immediate and independent legal consequences that cannot be changed on later review of the [FERC action], even if [FERC] relies on the BiOp."  *Id.*  FERC proceedings involve a different array of licensing conditions and standards for license alterations (16 U.S.C. § 799), and most importantly even though FERC must consider the BiOp, it cannot change it or modify it.  *Id.* (citing *Bennett*, 520 U.S. at 169-70).  As explained in *Dow Agrosciences*, "the BiOp is the final action of the Fisheries Service that determines whether [the use in issue] will jeopardize an endangered or threatened species or adversely affect their habitats.  To issue a BiOp, the Fisheries Service develops its own record and makes its own findings."  *Id.* at 265-66.  Here, the record of the Kennebec BiOps is the record generated by NMFS, not a record generated in the FERC proceedings.

And the Federal Defendants should not be heard to feign ignorance of the BiOps' independently "powerful coercive effect," even though BiOp conditions may not create legally binding prohibitions on FERC with regard to FERC's independent decisonmaking.  The BiOps create the "safe harbor *for all persons*" (*Dow Agrosciences*, 637 F.3d at 266) (emphasis in original):

> As the [United States Supreme] Court explained, the action agency would 'very rarely choose' to act contrary to the Fisheries Service's recommendation, and if it did so, it would do so 'at its own peril (and that of its employees),' because in doing so it would lose statutory immunity and expose itself to the civil and criminal penalties, including imprisonment. *Id.* [*Bennett v. Spear,* 520 U.S.] at 170.  As the Court

> pointed out, "The [Fisheries] Service itself is, to put it mildly, keenly aware of the
> virtually determinative effect of its biological opinions." *Id.*

*Dow Agrosciences*, 637 F.3d at 266.  That "keen awareness" is present in this case, exemplified

already by FERC's decision to accept, without notice or hearing, the Hydro-Kennebec project

BiOp.  The Kennebec BiOps "alter[] the legal regime to which the action agency [and the dam

licensees] are subject."  *Bennett* 520 U.S. at 169.  The "safe harbor from liability under the ESA is

finally and exclusively defined by the BiOp," not by FERC's license alteration decision under the

FPA.  *Dow Agrosciences*, 637 F.3d at 266.

But even if FERC were to choose not to rely on the BiOp (in the pending Lockwood,

Shawmut, Weston projects) – or, of perhaps greatest concern in this case – were to delay decision

on the license alteration given its own agency workload and proceedings agenda, the BiOp on its

own terms would not be subject to any review in any judicial proceeding challenging a final FERC

order.  But the "BiOp would still exist, having significant legal consequences, . . . mak[ing] final

findings and defin[ing] the safe harbor from civil and criminal liability [under the ESA]."  *Id.*  The

Brookfield Defendants would still be governed in part by the BiOp.  The Brookfield Defendants

would have this safe harbor even if FERC takes years to reach a final order in its own proceedings

(not an unheard of prospect, given that the FERC docket has been pending for more than a year and

Brookfield Defendants have explored the viability of certain time extensions).  A legally deficient

BiOp, therefore, would go unchallenged for an indefinite period of time, rendering the whole

section 7 consultation process and NMFS's performance in applying the ESA governing protection

of an endangered species a hollow, unreviewed, exercise.  Or, in yet another alternative, the

Brookfield Defendants could take an action that complied with a FERC order, but did not comply

with all of the terms and conditions of the BiOp; in such a context, the Brookfield Defendants

would not be protected by the BiOp's safe harbor, even though they are complying with a licensing

alteration order of FERC.  The BiOp's effect as independent agency action of NMFS becomes

apparent.

Further, as the Fourth Circuit also noted in *Dow Agrosciences*, when a court of appeals

reviews FERC's reliance on a NMFS BiOp, the court's review "would not be the same as if the

district court would review the BiOp itself directly under the APA."  *Id.* at 266.

> [W]hen a court of appeals reviews *the [action agency's] reliance* on a BiOp, it would
> determine only whether the [action agency's] reliance was arbitrary and capricious.
> But only by direct judicial review by the district court under the APA could the
> BiOp's findings and conclusions themselves be challenged.  *See City of Tacoma v.
> FERC,* 460 F.3d 53, 75 (D.C.Cir.2006) ("[W]hen we are reviewing the decision of an
> action agency to rely on a BiOp, the focus of our review is quite different than when
> we are reviewing a BiOp directly.  In the former case, the critical question is whether
> the action agency's reliance was arbitrary and capricious, not whether the BiOp itself
> is somehow flawed").  As the court in *City of Tacoma* explained, while the remedy
> flowing from the [action agency's] inappropriate reliance could result in reversal of
> the [action agency's order], because the [action agency] had no authority or
> requirement to address the adequacy of the BiOp itself, there could never be a basis
> for the reviewing court to vacate the BiOp. The BiOp would remain as the final
> action of the Fisheries Service which would persist in shaping the legal regime under
> which both the action agency and the [applicant] thereafter function.  As the
> Supreme Court observed, the Fisheries Service's BiOp would remain "virtually
> determinative." *See Bennett*, 520 U.S. at 170, 117 S.Ct. 1154.

*Dow Agrosciences*, 637 F.3d at 266-67.

These points made in *Dow Agrosciences* are underscored again in this case:  even if, upon

review by a court of appeals, FERC's *reliance* on the BiOps were to be found arbitrary and

capricious "because of an unreasonable or unsupportable BiOp," (*Dow* Agrosciences, 637 F.3d at

267), the remedy would relate only to the FERC order – "the BiOps' final findings, and definition

of the safe harbor would continue to be in effect as final agency action, see 50 C.F.R. § 402.14(1),

and its legal consequences could still not be altered, regardless of [FERC's] order." *Id.* at 267

(citing *Bennett,* 520 U.S. at 169–70).  "Takes" that should be unauthorized under the ESA (because

of the deficiencies in the BiOp) throughout that whole period of time of review in the court of

appeals, remain "safe harbored" even after a successful court of appeal challenge, and no successful

challenge to a legally deficient application of the ESA by NMFS is ever *remedied* by any court. The court of appeals review of a FERC order is not an "adequate remedy" under the APA, and in fact by presenting this argument NMFS seeks to insulate itself from any judicial review of its final agency actions.

Thus, this Court should not set precedent that BiOps rendered in the context of action agency proceedings governed by a court of appeals judicial review statute for the action agency, are not subject to challenge like all other biological opinions under the rule of *Bennett v. Spear*, 520 U.S. 154 (1997). Other federal agencies like EPA and FERC are governed by court of appeals judicial review provisions. *See* 28 U.S.C. § 2342(1) (Federal Communications Commission). The federal wildlife agencies (e.g., NMFS or U.S. Fish & Wildlife) as ESA consulting agencies should not be insulated from review of their final agency actions under the ESA, in just those cases where the action agency so happens to be governed by a court of appeals judicial review statute in its own right. Such precedent would stake out an exception to biological opinions issued in one context, over others, giving certain federal action agencies (FERC, EPA, FCC) special exceptions in section 7 consultations that have no statutory basis in the plain language of the ESA or in their own judicial review statutes. Indeed, another anomaly would be that judicial review of NMFS BiOps arising from consultations with the U.S. Bureau of Reclamation as "action agency" (in its role as manager of federal dams and irrigation projects) would be in district court [see, e.g., *National Wildlife Federation v. NMFS*, 524 F.3d 917 (9th Cir. 2007); *Pacific Coast Federation of Fisherman's Associations v. U.S. Bureau of Reclamation*, 426 F.3d 1082 (9th Cir. 2005)], whereas cases challenging NMFS BiOps involving FERC's regulatory power over non-federal dams would be *restricted* to the courts of appeals. There is no rational basis for ousting district court jurisdiction for direct challenges to NMFS BiOps in one dam-operation setting over another.

The *Dow Agrosciences* court also clearly responded to what amounts to the Defendants' misplaced reliance on the *City of Tacoma* case – rejecting the same reliance argued in the present case.  As explained in *Dow Agrosciences*, *City of Tacoma v. FERC*, 460 F.3d 53 (D.C. Cir. 2006), was an action actually brought under the court of appeals judicial review provision, challenging a FERC licensing process "in which the plaintiff alleged that FERC relied on flawed BiOps in its decision-making."  *Dow Agrosciences*, 637 F.3d at 268.  As in *Dow Agrosciences*, the procedural posture of this case is notably different from *City of Tacoma* where the action agency's reliance on the BiOp was challenged in the court of appeals for review of *the action agency's* final order.  Here, Plaintiffs seek judicial review of the LSW BiOps prior to the action agency's final decision, and challenge the HK BiOp on the grounds that it has the same inherent deficiencies in the LSW BiOp and truly cannot be afforded scrutiny in isolation from the "legal regime" (*Bennett*, 520 U.S. at 169) set by the LSW BiOps for the other three dams in issue on the river below the Sandy (with all dams now owned and operated by the same corporate family, the Brookfield Defendants).  The *Dow Agrosciences* court noted that, following the lead of *Bennett*, courts allow judicial review of BiOps under these circumstances, noting further that even the D.C. Circuit recognizes such judicial review. *See Rancho Viejo, LLC v. Norton,* 323 F.3d 1062, 1066 n.1 (D.C. Cir. 2003); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,* 450 F.3d 930, 940–41 (9th Cir. 2006); *Miccosukee Tribe v. United States,* 566 F.3d 1257, 1264 (11th Cir. 2009); *see also National Wildlife Federation v. NMFS* 524 F.3d, 917 923-24 (9th Cir. 2007) (affirming district court rejection of NMFS BiOp, in case where U.S. Bureau of Reclamation was "action agency" as manager of federal dams in the Columbia River System); *Pacific Coast Federation of Fisherman's Associations v. U.S. Bureau of Reclamation*, 426 F.3d 1082 (9th Cir. 2005) (reversing and remanding to district court, concluding that an RPA – "reasonable and prudent alternative" – of an NMFS BiOp was arbitrary and capricious).  The point is that *City of Tacoma* must not be read as precedent that *precludes* district

14

court judicial review of BiOps rendered when FERC is the action agency; the D.C. Circuit simply decided to expand the scope of its court of appeals review to include the BiOp challenge in a case seeking review of FERC's order in the first instance. *Dow Agrosciences*, 637 F.3d at 268 (explaining and distinguishing *City of Tacoma*).[5]

Thus, despite the Federal Defendants' arguments in this case and suggestion that the law is "clear" in their favor [ECF No. 18 at 9 & subheading 2], *Dow Agrosciences* – decided five years after *City of Tacoma* and sufficiently distinguishing it – supports this Court's exercise of direct judicial review of NMFS's final agency action in this case under the APA.

We make one additional observation on the significance of *Dow Agrosciences* to this case. As the identity of the plaintiff in *Dow Agrosciences* shows, the principle of jurisdiction at stake in this case cuts both ways, in favor of both industry and environmental groups, to cover any challenge to NMFS final agency action rendered in the context of consultations under section 7 for another federal agency. If the Brookfield Defendants were not satisfied with the terms of an ITS or objected to arbitrary or capricious findings made in a biological opinion, they have equal right to challenge

---

[5] We recognize that the *City of Tacoma* case may be read to contain some dicta, in turn requiring this subsequent explanation and analysis from the Fourth Circuit in *Dow Agrosciences*. While *City of Tacoma* saw that "in other contexts a BiOp is subject to independent review in a proceeding in which the agency issuing the BiOp [i.e., the consulting agency] is a party," the court (without explanation) then stated in dictum that "when a BiOp is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals," *Id.* at 77. *Dow Agrosciences* clarifies that the use of the word "only" is dictum that should not be read to overrule *Bennett* and the substantial body of case law recognizing that BiOps issued by consulting agencies like NMFS are final agency action subject to independent review. In other words, *a* means for challenging a BiOp is the *City of Tacoma* challenge against FERC (once FERC has reached decision, and the consulting agency intervenes in the court of appeals' review) – and assuming the court of appeals would follow the D.C. Circuit's lead in expanding the scope of review to include the direct challenge against NMFS; but it is by no means the *only* means to challenge NMFS directly when a BiOp is prepared in a FERC consultation. This is the significance of Fourth Circuit's carefully drawn distinction in *Dow Agrosciences* (and noticeably one that the Federal Defendants did not wish to address, in omitting discussion of *Dow Agrosciences* in their opening memorandum here): "While we do not determine here whether to follow this decision [*City of Tacoma*], any precedential value it might provide is limited to a discussion of whether a court of appeals could expand the permissive scope of review when reviewing an acting agency's action to include review of the BiOp itself. But a ruling providing for such an expansion of judicial review does not *preclude* judicial review of a BiOp under the APA in other procedural circumstances." *Dow Agrosciences*, 637 F.3d at 268.

that final agency action in this Court under the APA.  They would not be restricted to pursuing FERC exclusively, bound to a case based only upon FERC's ultimate reliance – or not – on a BiOp. As here, if there were legal basis under the APA to challenge NMFS directly, they could mount that challenge directly, and NMFS would not have its determinative final agency action shielded from direct review, based on the fortuity that the section 7 consultation involved an action agency that so happens to be governed by a court of appeal judicial review provisions relating to the action agency's own orders.

The Federal Defendants' citation and discussion of *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989) does not significantly further the analysis, and is far from "well-settled Ninth Circuit precedent" as characterized by the Federal Defendants [ECF No. 11].  *Yeutter* was not a case involving a section 7 consultation under the ESA or any biological opinion/ITS.  The Ninth Circuit found that the nature of the action in *Yeutter* (a challenge to issuance of a FERC license after the Forest Service responded to a FERC section 4(e) letter issued by FERC under section 4(e) of the FPA), was more in the nature of an after-the-fact challenge to FERC's modification and license orders which had already been finalized in FERC proceedings: "[I]t is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC."  *Id.* at 912.  *Yeutter* should not be read to stand for the proposition the Defendants advance here, especially in light of the much more recent litigation (subsequent to *Yeutter*) embodied by *National Wildlife Federation v. NMFS*, 524 F.3d 917 (9th Cir. 2007) on the Columbia River System which, the Ninth Circuit has noted, involves judicial review of BiOp challenges in district court under the rule of *Bennett* in cases where "the Federal Energy Regulatory Commission plays a number of roles, including licensing of non-federal hydropower projects."  *Id.* at 923.

The other two cases cited by the Defendants, *Idaho Rivers United v. Foss*, 373 F. Supp. 2d 1158 (D. Idaho 2005) and *Southwest Ctr. For Biological Diversity v. FERC*, 967 F. Supp. 1166 (D.

Ariz 1997), were both decided before the benefit of the Fourth Circuit's holding in *Dow Agrosciences* – and the District of Arizona case nonetheless contained a direct challenge to FERC action, naming FERC as a party, unlike the present case. *Southwest Ctr.*, 967 F. Supp. at 1166-68. But, even in the context of declining to exercise jurisdiction by reliance on *Yeutter*, the District of Idaho clearly lamented the result as "troubling." *Idaho Rivers* 373 F. Supp. 2d at 1161 n.3. The court noted the tension between FERC's charge under the FPA, which "seems in direct conflict with the command of the ESA to give priority to listed species." *Id.* (citing *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 176–82 (1978)). If the Fourth Circuit's precedent from *Dow Agrosciences* had been in existence, the District of Idaho might have had grounds for additional circumspection in deciding the jurisdictional issue. This Court has the benefit of *Dow Agrosciences*, as well as this key observation from the Idaho court. FERC's statutory charge is to "give equal consideration to" the purposes of energy conservation, "mitigation of damage to" fish and wildlife, recreational opportunities, and other interests. 16 U.S.C. § 797(e). FERC has less "expertise in ESA issues" and it is altogether unclear what record, if any, FERC will or would generate in support of its decisions on ESA issues. In language that "admits of no exception," *TVA v. Hill*, 437 U.S. 153 (1978), the ESA requires federal agencies to "insure" that their actions are not likely to jeopardize the continued existence of threatened and endangered species or adversely modify their designated critical habitat. 16 U.S.C. § 1536(a)(2). In meeting this unambiguous and "rigorous" requirement, *Sierra Club v. Marsh*, 816 F.2d 1376, 1385 (9th Cir. 1987), agencies must base their decisions on the best scientific and commercial data available. 16 U.S.C. § 1536(a)(2). The section 7 consultation is in furtherance of this process, and central to application of the ESA. It recognizes that the various federal agencies with different policy agendas and statutory charges may need the special expertise of the consulting agency to "insure" that their actions are not likely to jeopardize the continued existence of endangered species.

17

Given the significance of the consulting agency's ESA obligations, when its final findings and decisions (in the form of a BiOp and ITS terms and conditions) are flawed under the APA standards governing review of agency action, the consulting agency like NMFS should not skirt or delay judicial review of its own final findings and decisions. The policy interests of the ESA to prioritize both survival and restoration of endangered species cannot afford the delay in waiting for an action agency decision based on flawed findings and decisions of NMFS, including flawed terms and conditions of an ITS. This is especially true when the challenged terms and conditions of the ITS inherently provide a long period of time for the action agency (and applicant) to adjust their conduct to comply with the ESA – multiple years in this case. An action filed in the court of appeals against FERC to expedite its decision is of little use in this context, since it makes little sense to seek the action agency's expedited reliance on BiOps that Plaintiffs already contend are flawed under legal standards governing NMFS's performance and unique role. NMFS would have Plaintiffs either wait for FERC to issue a decision in reliance (or not) on a flawed BiOp, or sue FERC in the First Circuit for inaction in failing to render decision on a flawed BiOp. When it is considered that there is no plain language support in the FPA for requiring final orders of *NMFS* to be subject to the court of appeals judicial review provision, the efficiency gained by such procedural posturing in cases involving FERC section 7 consults, and of no other federal agency to date, seems highly doubtful.[6]

---

[6] There is also no guarantee that the First Circuit would follow in the steps of *City of Tacoma*, to expand its scope of review under the FPA, to include orders from other agencies, even if it made sense to file the review action against FERC in the First Circuit right now. There is no guaranty that NMFS would even intervene in a court of appeals case against FERC. And the nature of such a court of appeals case would, we suppose, be seeking a result that wants FERC to expedite decision to *not* rely on the BiOp and ITS terms and conditions – a case that the First Circuit, before there is even a FERC order, might decide not to entertain. The present challenge is entirely against NMFS; there is no aspect of this case challenging what FERC has done or should be doing – distinguishing this matter from those cases such as *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984), which held that because the FCC was governed by a court of appeals review statute, any action to challenge the FCC's

II.     **The LSW BiOp, as a final agency action of NMFS, is ripe for review.**

The Federal Defendants add a lack of "ripeness" argument to their motion to dismiss, as it

relates to the LSW BiOps.  ECF No. 18 at 17.  In light of the Supreme Court's analysis in *Bennett v.*

*Spear*, 520 U.S. 154, 177-78 (1997), the final agency action in the form of the BiOps and their

ITS's also satisfy the "fitness" inquiry for ripeness.  The issue is resolved by *Bennett*:  biological

opinions mark the "consummation" of the agency's decisionmaking, are not "of a merely tentative

or interlocutory nature," and represent action by which "rights or obligations have been

determined," or from which "legal consequences will flow."  *Id.* at 177-78.  It is uncontested in this

case that the Kennebec BiOps mark the consummation of NMFS's work.  There is nothing about

them that suggests or suggested that NMFS intended the BiOps to be works in progress or tentative

drafts – and, if so, that fairly raises a separate issue of whether NMFS can prolong the section 7

process for such a length of time [*see* 16 U.S.C. § 1536(b)] that delay by the process itself

jeopardizes an endangered species suffering a precipitous decline in numbers.[7]  The BiOps and the

accompanying ITS's set the rights and obligations of the Brookfield Defendants, who were the non-

federal representatives designated for the section 7 consultation, and who own or operate the dams

which violate the ESA unless operated in compliance with terms of an ITS.  Similarly, the BiOps

govern the rights of the Plaintiffs, as KHDG Agreement signatories and environmental groups with

direct interests in fish survival and recovery in the Kennebec River.  Plaintiffs cannot bring a citizen

---

failure to act or unreasonable delay in issuing its final order would likewise be within the jurisdiction of the
court of appeals.

[7] This latter issue, not directly before this Court, nonetheless underscores the significance of the ITS
accompanying a BiOp resulting from a section 7 consultation, under 16 U.S.C. § 1536(o)(2).  There is no
safe harbor to incidental "takes" of an endangered species until the ITS terms and conditions are issued as a
final action of NMFS (or the consulting agency), and no safe harbor defense to "takes" in an enforcement
action under section 11, until the ITS terms and conditions are in place.  This should provide sufficient
incentive for the consulting parties to act expeditiously to reach finality to the section 7 consultation.  The
observation underscores why the NMFS BiOp and ITS must be treated as the "consummation" of NFMS's
action and not "merely tentative" agency decisionmaking.

suit against the Brookfield Defendants for violation of the ESA *because of* the rights and obligations set by the (flawed) BiOps and ITS's, and the safe harbor of section 1536(o)(2). That is the "direct and immediate dilemma" in issue under the ripeness analysis. Plaintiffs contend that operation of the dams clearly violates the ESA, and that continued operation with the BiOps' scheme of years of dam modifications contrary to best available scientific and commercial data, jeopardizes the continued existence and recovery of an endangered species (and results in "destructions or adverse modification" of critical habitat). 16 U.S.C. § 1536(a)(2). Flawed final agency action of NMFS, which has the immediate effect of exempting that violation, requires immediate challenge in this Court under section 704 of the APA.

By the same argument, Plaintiffs also have standing in the form of present injury. *National Wildlife Federation v. NMFS*, 524 F.3d 917 (9th Cir. 2007); *see also Anacostia Watershed Society v. Babbitt*, 871 F. Supp. 475 (D.D.C. 1994), *clarification denied*, 875 F. Supp. 1; *Friends of the River v. U.S. Army Corps of Engineers*, 870 F. Supp. 2d 966 (E.D. Cal. 2012) (environmental groups' challenge to a Corps levee vegetation removal policy was ripe for judicial review as a violation of procedural requirements of NEPA, APA, and ESA). Yet, in addition, three of the four Plaintiffs are signatories to the KHDG Agreement, a contractual agreement between them, NMFS, and dam licensees/owners (as well as state agencies) governing the operation of the dams. The BiOps pose a direct and immediate dilemma between the dam licensees' obligations under the KHDG Agreement and compliance with the terms and conditions of the ITS's in the BiOps. *See* ECF No. 1, Complaint ¶¶ 66-67. The ITS terms and conditions actually provide the dam licensee/owners with an ESA "safe harbor" that undermines the KHDG Agreement and its bedrock premise of restoration of self-sustaining populations of sea-run species (some of which are endangered, like Atlantic salmon) to the Kennebec River watershed. So these Plaintiffs have as much interest in this case as a dam

licensee or owner, because they have contractual interests in how the dams operate in relation to the environment, and those contractual interests are part of the federal dam license.

Even without the KHDG Agreement, plaintiffs such as Maine Rivers meet the "injury in fact" invasion of a legally protected interest standard. *See National Wildlife Federation v. NMFS*, 524 F.3d 917 (9th Cir. 2007); *Conservation Council for Hawaii v. National Marine Fisheries Service*, 97 F. Supp. 3d 1210, 1231-32 (D. Hawaii 2015). Within this argument Defendants appear to advance a similar exhaustion of administrative remedies argument (the Brookfield Defendants doing so expressly, ECF No. 19 at 14, the Federal Defendants in the context of arguing Plaintiffs have not suffered hardship, ECF No. 18 at 19). As argued above, Justice Scalia writing for the unanimous Court in *Bennett*, dispelled NMFS's notion that its work under section 7 "has no legal effect" or is basically of no significance unless and until FERC formally responds to it. "In reality," explains the Court, a Biological Opinion "has a powerful coercive effect on the action agency":

> [T]he action agency must not only articulate its reasons for disagreement (which ordinarily requires species and habitat investigations that are not within the action agency's expertise), but that it runs a substantial risk if its (inexpert) reasons turn out to be wrong. A Biological Opinion of the sort rendered here alters the legal regime to which the action agency is subject. When it "offers reasonable and prudent alternatives" to the proposed action, a Biological Opinion must include a so-called "Incidental Take Statement"—a written statement specifying, among other things, those "measures that the [Service] considers necessary or appropriate to minimize [the action's impact on the affected species]" and the "terms and conditions ... that must be complied with by the Federal agency ... to implement [such] measures." 16 U.S.C. § 1536(b)(4). Any taking that is in compliance with these terms and conditions "shall not be considered to be a prohibited taking of the species concerned." § 1536(*o*)(2). Thus, the Biological Opinion's Incidental Take Statement constitutes a permit authorizing the action agency to "take" the endangered or threatened species so long as it respects the Service's "terms and conditions." The action agency is technically free to disregard the Biological Opinion and proceed with its proposed action, but it does so at its own peril (and that of its employees), for "any person" who knowingly "takes" an endangered or threatened species is subject to substantial civil and criminal penalties, including imprisonment. *See* §§ 1540(a) and (b) (authorizing civil fines of up to $25,000 per violation and criminal penalties of up to $50,000 and imprisonment for one year); *see also Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 708, 115 S.Ct. 2407, 2418, 132

> L.Ed.2d 597 (1995) (upholding interpretation of the term "take" to include significant habitat degradation).
>
> The Service itself is, to put it mildly, keenly aware of the virtually determinative effect of its biological opinions.

*Bennett*, 520 U.S. at 169-70.  The ITS's in issue in this case carry the same legal warnings (ECF Nos. 1-1 and 1-2, Complaint Exhibits 1 & 2 first pages); i.e., ECF No. 1-2 at 2:  "The RPM's and their implementing terms and conditions outlined in the ITS are non-discretionary, and must be undertaken so that they become binding conditions for the exemption in section 7(o)(2) to apply.  Failure to implement the terms and conditions through enforceable measures may result in a lapse of the protective coverage of section 7(o)(2) [16 U.S.C. § 1536(o)(2)]."  *See also* ECF No. 1-1 at 64-67 (HK BiOp ITS) & ECF No. 1-2 at 147-57 (LSW BiOp ITS).  Thus, by NMFS's own quoted words, the Defendants are "keenly aware" of the "virtually determinative effect of [the] biological opinions."  *Id.*  Even if the action agency chooses not to follow the BiOp, with either lesser or greater restrictions, the ITS remains as the *ESA exemption* and cannot be altered by the action agency.  *Bennett*, 520 U.S. at 169-70; *Dow Agrosciences LLC v. National Marine Fisheries Service*, 637 F.3d 259, 267 (4th Cir. 2011).  There is no administrative remedy against NMFS that remains for exhaustion.

This conclusion also disposes of the Brookfield Defendants' argument that Rule 19 of the Federal Rules of Civil Procedure requires joinder of FERC as an "indispensable party" to this action.  In *Dow Agrosciences*, the action agency [EPA] was not an indispensable party to the APA action challenging the NMFS BiOp.  *Id.* at 259, 268 ("By contrast, a Fisheries Service's BiOp and the EPA's final order under FIFRA are two distinct final agency actions.").  Other such cases have not required joinder of the action agency in challenges to wildlife agency biological opinions or ITS's.  *See Rancho Viejo, LLC v. Norton,* 323 F.3d 1062, 1066 n.1 (D.C. Cir.2003); *Miccosukee Tribe v. United States,* 566 F.3d 1257, 1264 (11th Cir. 2009).  The Brookfield Defendants do not

cite authority in support of their indispensable party argument.  They raise *Bangor Hydro-Elec. Co. v. F.E.R.C.*, 78 F.3d 659, 661-62 (D.C. Cir. 1996) in a footnote to argue it is "beyond question" that FERC is "the proper government party in interest here."  ECF No. 19 at 16 n.5.  Again, *Bangor Hydro* was a direct petition for review brought by a hydroelectric project licensee against FERC for review of a FERC order requiring it comply with a Department of Interior fishing prescription.  *Id.* at 661.  The Department *intervened* in that action, and raised the "rather novel jurisdictional argument" that FERC was the wrong respondent because the petitioner was "actually challenging" the fishing prescription.  The D.C. Circuit, perhaps unremarkably, rejected the Department's argument, observing that "the order on review is undeniably that of the Commission [FERC]."  *Id.* at 662.  In the present case, NMFS (within the Department of Commerce) and the Brookfield Defendants argue now that FERC is not only the *right* respondent, but indeed the *only* respondent, in a case challenging NMFS final agency action.  Further, FERC has not issued an order in the Lockwood, Shawmut, and Weston project proceedings.  Complete relief, in the form of vacating the BiOps and ITS's and remanding to NMFS, is available without FERC (in its "inexpert" stance under the ESA, see *Bennett*, 520 U.S. at 169).  Rule 19 does not require that FERC be joined in this case, and the Brookfield Defendants' clear motive in raising the issue is to use Rule 19 as an end-run in an attempt to oust this court from jurisdiction under the APA in reviewing a federal agency's final action.

**III.    The Complaint states a cause of action as a challenge to the BiOps and ITS's under the APA.**

The Brookfield Defendants raise lastly a "failure to state a claim" argument, stating that even if the challenge to the NMFS final agency action moves forward, the case does not state a claim against them as dam owners/licensees under that action for judicial review.  First, the Brookfield Defendants specifically requested, and were granted, designation as the non-federal

representative for informal consultation on Atlantic salmon under section 7 of the ESA. ECF No. 1-2 at 9.  The Brookfield Defendants drafted the Biological Assessment and its unique concept of an "interim species protection plan" to create the odd regulatory grace period (found nowhere in NMFS regulations) for what is in essence a period of jeopardy to the continuing existence of endangered species and the destruction or adverse modification of their habitat.  The biological assessments became the basis of the Kennebec BiOps and ITS's.[8]  The Brookfield Defendants – either as the dam licensees, owners, or as the non-federal representatives in relation to the development of NMFS's final agency action – were parties to the federal agency action of NMFS under review.

As parties to the agency proceedings under review in this Court – i.e., the NMFS section 7 consultation resulting in final agency action in the form of BiOps and ITS's that govern the conduct of the Brookfield Defendants – these Defendants were included in this action seeking judicial review.  In a sense, the action is directly against them too, because they or one or more of their subsidiaries, actually engaged in part of the agency action in issue (the development of the Biological Assessments and the "interim species protection plans" that NMFS adopted in issuing the Kennebec BiOps and ITS's).  But even without that involvement, they are or were parties to the NMFS proceedings, and they are subject to the ITS terms and conditions that are now under judicial review pursuant to the APA.  If they wish to abandon their position as a party to the judicial review

---

[8] It was at least two or more of the Brookfield Defendants as individually identified, Complaint ¶14 (b) & (e), who asked to be, or became, the non-federal representatives for initiation of section 7 consultation.  At the time, the Brookfield Defendants or their predecessors in interest, were facing a citizen suit in this Court for, among other claims, noncompliance with the ESA.  They mooted the ESA claim by the section 7 consultation in issue in this case.  They now suggest that the action they took, in part to result in mooting a prior citizen suit under the ESA, must now await further agency action (with FERC) before it is ripe for review.  It seems that at every turn, the Brookfield Defendants are putting off the day of reckoning of the hydroelectric projects' jeopardy to an endangered species.  The danger is that that day of reckoning may itself be mooted in the meantime by an extinction of the wild species in the United States.

proceedings of this case, and entrust the judicial review action to NMFS entirely, that would presumably be their right.

The remainder of the Brookfield Defendants' analysis in this section of their motion [ECF No. 19 at 18-29] appears to want to analyze this case as a citizen suit under the ESA, to suggest that an unavailable or futile citizen suit under the ESA is Plaintiffs' only option to redress Brookfield Defendants' operations on the Kennebec River.  In making the argument, however inapplicable it may be to the present pleadings, they illustrate the point that Plaintiffs make about the legal significance of the flawed BiOps and terms and conditions of the ITS's.  They say that Plaintiffs do not have an ESA claim (indeed, no citizen does) because "[o]n the contrary, the ESA specifically contemplates that some take may legally occur without constituting jeopardy or adverse modification, as long as reasonable and prudent measures ("RPM's") are put in place to minimize the amount of take."  And then they cite 16 U.S.C. § 1536(b)(4)(ii) – part of the ITS provision of the ESA.  It is the alleged flawed decisionmaking under the ESA (the final agency action of NMFS) which has erected these RPM's, these terms and conditions of ITS's, under 16 U.S.C. § 1536(b)(4)(i)-(iv) of the ESA, which is under challenge.  The APA clearly provides judicial review of those underlying governmental decisions relating to the ESA – i.e., those very issues that the Brookfield Defendants argue "the ESA specifically contemplates."  ECF No. 19 at 19.  The alleged deficiencies of the Kennebec BiOps, summarized in the Complaint in ¶ 34(a)-(f) and then explained in more detail in the remaining allegations, state a claim for setting aside the BiOps and remanding to NMFS for re-initiation of section 7 consultation in accordance with law, under the APA, 5 U.S.C. §§ 704, 706.  The Brookfield Defendants' arguments for dismissal under Rule 12(b)(6) ignore these detailed and specific allegations of the Complaint supporting a conclusion that NMFS's final agency action in this case was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

IV.     **Conclusion**

For the reasons argued above, Plaintiffs as petitioners in this action for judicial review under

the APA request that this Court deny Defendants' Motions to Dismiss (ECF Nos. 18 and 19).

Dated at Portland, Maine this 17th day of November, 2015

/s/  Russell B. Pierce, Jr. _____
Russell B. Pierce, Jr., Esq.
Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
rpierce@nhdlaw.com

/s/ Charles Owen Verrill, Jr. _____
Charles Owen Verrill, Jr.
Attorney for Plaintiffs – admitted *pro hac vice*

Charles Owen Verrill, Jr.
Attorney at Law
1776 K Street, NW
Washington, DC 20006
CharlesVerrill@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2015, I electronically filed the foregoing
**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to
all registered counsel of record.

/s/ Russell B. Pierce, Jr. _____
Russell B. Pierce, Jr., Esq.
Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
rpierce@nhdlaw.com