UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MAINE COUNCIL OF THE          )
ATLANTIC SALMON               )
FEDERATION, et al.,           )
                              )
        Plaintiffs,           )
                              )
    v.                        )          2:15-cv-00261-JAW
                              )
NATIONAL MARINE FISHERIES     )
SERVICE OF THE NATIONAL       )
OCEANIC AND ATMOSPHERIC       )
ADMINISTRATION,               )
                              )
and                           )
                              )
BROOKFIELD RENEWABLE          )
SERVICES MAINE LLC, et al.,   )
                              )
        Defendants.           )

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

The Federal Power Act (FPA) vests the responsibility for licensing hydroelectric projects on this Country's navigable waterways with the Federal Energy Regulatory Commission (FERC) and, consistent with this authority, FERC licensed four hydroelectric projects on the Kennebec River in Maine. The licensees asked FERC to amend their FPA licenses to incorporate the provisions of the Interim Species Protection Plan (ISPP) for the Gulf of Maine Distinct Population Segment (GOM DPS) of Atlantic salmon, a species found in the Kennebec River and protected under the Endangered Species Act (ESA). In response, FERC consulted with the National Marine Fisheries Service (NMFS) to obtain its biological opinion (BiOp)

about the likely impact of the license amendments on the GOM DPS of Atlantic salmon. The NMFS provided FERC with two written BiOps.

The Plaintiffs consist of four conservation organizations whose particular concerns include the survival of the Atlantic salmon and the restoration of traditional migrations of other sea-run species that inhabit the Kennebec River. The Plaintiffs filed a complaint asserting the NMFS biological opinions violated the requirements of section 7 of the ESA by implementing regulations that are arbitrary, capricious, and without any rational basis in making a no-jeopardy/no-adverse modification finding for the dams' impact on Atlantic salmon. The Defendants are the NMFS and the licensees.

The Defendants filed motions to dismiss, asserting, inter alia, that this Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Determining that under the FPA, the Courts of Appeals have exclusive jurisdiction over the matter, the Court grants the Defendants' motion to dismiss.

## I.   BACKGROUND

### A.   Procedural History

On July 8, 2015, the Plaintiffs – Maine Council of the Atlantic Salmon Federation (MC-ASF), Maine Rivers, the Natural Resources Council of Maine (NRCM), and the Kennebec Valley Chapter of Trout Unlimited (KVTU) – filed a complaint in this Court against the National Marine Fisheries Service (NMFS) of the National Oceanic and Atmospheric Administration (NOAA) (Federal Defendants), as well as Brookfield White Pine Hydro, LLC, Merimil Limited Partnership, Brookfield

Renewable Services Maine, LLC, Hydro Kennebec, LLC, and Brookfield Power US Asset Management, LLC (Licensee Defendants). *Compl.* (ECF No. 1) (*Compl.*). The Complaint challenged two BiOps issued by NMFS regarding the licensing of four hydroelectric dams on the Kennebec River in Maine, asserting that NMFS violated the requirements of section 7 of the Endangered Species Act (ESA) by implementing regulations that are arbitrary, capricious, and without any rational basis in making a no-jeopardy/no-adverse modification finding for the dams' impact on Atlantic salmon. *Id.* at 8. In support of the Complaint the Plaintiffs submitted the two NMFS BiOps at issue, *Compl.* Attach 1 (*2012 BiOp*) and *Compl.* Attach 2 (*2013 BiOp*), as well as the Kennebec Hydro Developers Group Agreement. *Compl.* Attach 3 (*KHDG Agreement*).

On October 13, 2015, the Federal Defendants filed a motion to dismiss the Complaint. *Fed. Defs.' Mot. to Dismiss* (ECF No. 18) (*Fed. Mot.*). On the same day, the Licensee Defendants filed a motion to dismiss the Complaint. *Mot. to Dismiss of Defs. Brookfield Renewable Services Maine LLC; Brookfield Power US Asset Management LLC; Brookfield White Pine Hydro LLC; the Merimil Limited Partnership; and Hydro Kennebec LLC* (ECF No. 19) (*Licensee Mot.*). The Plaintiffs responded on November 17, 2015. *Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss* (ECF No. 24) (*Pls.' Opp'n*). The Federal Defendants replied on December 15, 2015, *Fed. Defs.' Reply in Supp. of its Mot. to Dismiss* (ECF No. 27) (*Fed. Reply*), as did the Licensee Defendants. *Licensee Defs.' Reply to Pls.' Resp. in Opp'n to Mot. to Dismiss* (ECF No. 28) (*Licensee Reply*).

The Federal Defendants filed a motion to supplement their motion to dismiss on May 24, 2016, *Fed. Defs.' Mot. to Suppl. Pending Mot. to Dismiss* (ECF No. 29) (*Fed. Suppl. Mot.*), as did the Licensee Defendants on May 25, 2016.  *Licensee Defs.' Unopposed Mot. to Suppl. the R.* (ECF No. 30) (*Licensee Suppl. Mot.*).  On May 26, 2016, the Court granted the motions to supplement the motion to dismiss and to supplement the record and the Court set dates for the Plaintiffs' response and the Federal and Licensee Defendants' replies.  *Order Granting Mots. to Suppl. Mot. to Dismiss and Granting Mots. to Supp. the Record* (ECF No. 31) (*Suppl. Order*).  The Plaintiffs filed a response on June 15, 2016.  *Pls.' Resp. to R. Suppl. on Defs.' Mots. to Dismiss* (ECF No. 33) (*Pls.' Suppl. Opp'n*).  The Federal Defendants and the Licensee Defendants replied on July 6, 2015.  *Reply to Pls.' Resp. to Fed. Defs. Mot. to Suppl.* (ECF No. 35) (*Fed. Suppl. Reply*); *Licensee Defs.' Reply Br. on Mot. to Suppl. the R.* (ECF No. 34) (*Licensee Suppl. Reply*).

## II.   THE FACTUAL ALLEGATIONS OF THE COMPLAINT[1]

### A.   The Parties

#### 1.   The Plaintiffs

The Maine Council of the Atlantic Salmon Federation (MC-ASF) is a nonprofit corporation organized under the laws of the state of Maine, dedicated to the conservation, protection and restoration of wild Atlantic salmon and the ecosystems on which their well-being and survival depends.  *Compl.* at 9.  MC-ASF represents a

---

[1]   In considering a motion to dismiss, a court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs."  *Waterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

dozen different angling, conservation, and educational organizations in the state of Maine, and is comprised of more than 1,000 members, some of whom live in the immediate vicinity of the Lockwood, Hydro-Kennebec, Shawmut and Weston Projects. *Id.* These individuals enjoy angling and other forms of recreation on the Kennebec River in the vicinity of the projects at issue, and have devoted substantial time, energy, effort, and money to the restoration of Atlantic salmon and other anadromous species to the Kennebec River watershed. *Id.* ASF was a signatory to the KHDG Agreement and is a member of the Kennebec Coalition, which has a long history of involvement in all aspects of the restoration of the Kennebec watershed. *Id.*

Maine Rivers is a nonprofit organization, incorporated in the state of Maine with a mission "to protect, restore and enhance the ecological health of Maine's river systems." *Id.* at 9-10. For more than a decade Maine Rivers has worked to achieve its mission and has shown a strong interest in the recovery of the Kennebec River, most recently through the successful organization of the Maine Rivers Conference on the Kennebec: Restoring Fish for People and Wildlife, a day-long event which brought together more than one hundred people to focus on the restoration of sea-run species. *Id.* at 10. In addition, many members of Maine Rivers live in the Kennebec River watershed and frequently use the Kennebec and its tributaries for recreational purposes, including canoeing, kayaking and angling. *Id.*

The Natural Resources Council of Maine (NRCM) is Maine's largest environmental advocacy group with over 16,000 members and supporters, with a

mission is "to protect, conserve and restore Maine's environment now and for future generations." *Id.* NRCM has demonstrated long-standing interest in the recovery of the Kennebec River, as demonstrated by its participation in the Kennebec Coalition and signature to the KHDG Agreement. *Id.* Members of NRCM use the Kennebec River for recreational, educational and aesthetic pursuits in the vicinity of all the projects subject to the Complaint. *Id.* Its members have devoted substantial time, energy, effort, and money to the restoration of Atlantic salmon and other anadromous species in Maine, and to the Kennebec River watershed. *Id.*

The Kennebec Valley Chapter of Trout Unlimited (KVTU) is one of five Maine chapters of Trout Unlimited, a conservation organization whose mission is to conserve, protect and restore North America's cold-water fisheries and their watersheds. *Id.* KVTU is a member of the Kennebec Coalition, and was a signatory of the KHDG Agreement. *Id.* at 11. KVTU has been engaged in advocacy for Atlantic salmon and other native species in the Kennebec River for more than 25 years, while its members live in the Kennebec watershed, fish the Kennebec River and its tributaries on a regular basis, and engage in restoration efforts for Atlantic salmon— including annual egg planting efforts in the Sandy River. *Id.* at 10-11. KVTU has participated in relicensing proceedings relating to every Federal Energy Regulatory Commission (FERC)-licensed dam on the Kennebec River during that time, and has demonstrated a long-standing commitment to recovery of Atlantic salmon and other anadromous species in the Kennebec River and throughout the Gulf of Maine. *Id.* at 11.

6

### 2.     The Defendants

The National Marine Fisheries Service (NMFS) of the National Oceanic and Atmospheric Administration (NOAA) is the federal administrative agency assigned with the responsibility to administer and enforce the ESA, with respect to the listed species of Atlantic salmon, by the Secretary of the Department of Commerce pursuant to 16 U.S.C. § 1533(a)(2) and 50 C.F.R. § 402.01(b).  *Id.* at 11-12.

Brookfield White Pine Hydro, LLC owns or controls the Shawmut and Weston Project dams and assets, and on May 1, 2013, became the licensee of the Shawmut and Weston Projects.  *Id.* at 12.  In early 2013, Brookfield White Pine Hydro, LLC[2] was designated the non-federal representative for performing consultation under section 7 of the ESA regarding federally listed Atlantic salmon at the Lockwood, Shawmut, and Weston dams.  *Id.*

Merimil Limited Partnership is the indirect general partner of Brookfield White Pine Hydro LLC; Merimil Limited Partnership is an owner of the Lockwood Project dam and assets, and is the holder of the FERC license of the Lockwood Project. *Id.*

Brookfield Renewable Services Maine, LLC owns or operates, in its own name or through a subsidiary, the Lockwood, Shawmut, and Weston Project dams or assets. *Id.*

Hydro Kennebec, LLC is the licensee of the Hydro Kennebec Project.  *Id.*  Hydro Kennebec, LLC was designated the non-federal representative for performing

---

[2]      At the time it was FPL Energy Maine Hydro, LLC.  *Compl.* at 12.  On or about May 1, 2013, FPL Energy Maine Hydro, LLC changed its name to Brookfield White Pine Hydro, LLC.  *Id.*

consultation under section 7 of the ESA regarding federally listed Atlantic salmon at the Hydro Kennebec Project. *Id.*

Brookfield Power US Asset Management, LLC is a subsidiary of Brookfield Asset Management, Inc., a corporation based in Canada. *Id.* Brookfield Power US Asset Management, LLC in its own name or through a subsidiary, owns and operates the Hydro Kennebec Project dam or assets. *Id.*

### B.    The Biological Opinions for Atlantic Salmon

On September 17, 2012, NMFS issued a biological opinion (2012 BiOp) for the Federal Energy Regulatory Commission's (FERC) proposed amendment of the license held by Hydro-Kennebec, LLC for the Hydro-Kennebec dam on the Kennebec River near Waterville, Maine, to incorporate the provisions of a four year Interim Species Protection Plan (ISPP). *Id.* FERC approved this amendment, without notice or hearing, on February 28, 2013. *Id.* On July 19, 2013, NMFS issued a biological opinion (2013 BiOp) for FERC's consideration of the Brookfield White Pine Hydro, LLC proposal to incorporate the provisions of a seven year (2013-2019) ISPP into the licenses for the Lockwood, Shawmut, and Weston dams on the Kennebec River. *Id.*

The 2012 BiOp and 2013 BiOp addressed certain final and proposed federal actions concerning the Atlantic salmon, an anadromous species that spends most of its adult life in the ocean but returns to freshwater, including the Kennebec River, to spawn and thus reproduce. *Id.* at 2-3. The GOM DPS of Atlantic salmon was initially listed as an endangered species under the ESA in 2000,[3] a listing expanded in 2009

---

[3]    65 Fed. Reg. 69459 (November 17, 2000).

to include Atlantic salmon on the Kennebec, Penobscot, and Androscoggin Rivers in Maine.[4]  *Id.* at 3.  Designation of critical habitat for the GOM DPS of Atlantic salmon became final in June, 2009.[5]  *Id.*  The current GOM DPS includes all anadromous Atlantic salmon whose freshwater range occurs in the watersheds from the Androscoggin River north to the Dennys River in Maine.  *Id.*

### C.    The KHDG Agreement

On May 26, 1998, before any ESA listing of the Atlantic salmon as an endangered species, an agreement was entered into  among two private associations of interests on the Kennebec River and pertinent federal and state agencies, commonly referred to as the "KHDG Agreement."  *Id.*  Signatories to the agreement are: 1) the Kennebec Hydro Developers Group (KHDG), an association whose members were owners or licensees of hydroelectric facilities on the Kennebec, including the owners or licensees of the four Kennebec River dams involved in this action; 2) an association known as the "Kennebec Coalition" (comprised of American Rivers, Inc., the Atlantic Salmon Federation, the Kennebec Valley Chapter of Trout Unlimited, the Natural Resources Council of Maine, and Trout Unlimited); and 3) pertinent federal and state agencies, referred to as "the resource agencies," including NMFS, the Maine Department of Marine Resources (MDMR), the Maine Department of Inland Fisheries and Wildlife (MDIFW), the Maine State Planning Office (SPO), and the United States Fish and Wildlife Service (USFWS).  *Id.* at 3-4.  FERC incorporated the terms of the KHDG Agreement into the project license terms of each

---

[4]      74 Fed. Reg. 29344 (June 19, 2009).
[5]      74 Fed. Reg. 29300 (June 19, 2009) (codified at 50 C.F.R. § 226.217).

of the four Kennebec River dams at issue in this action, and each of the corporate Defendants assumed the obligations of the KHDG Agreement on acquisition of the dams and licensed hydroelectric facilities from the respective former dam owners and signatories of the KHDG Agreement. *Id.* at 4. Among the purposes of the KHDG Agreement is a "comprehensive settlement governing fisheries restoration, for numerous anadromous and catadromous species, that will rapidly assist in the restoration of these species in the Kennebec River. . . ." *Id.* (citing KHDG Agreement, Part II, at 2).

The KHDG Agreement required prompt installation of interim upstream fish passage at Lockwood, presently the first dam on the Kennebec. *Id.* Permanent upstream passage at Lockwood and Hydro-Kennebec (the Kennebec dam immediately upstream of Lockwood) was required two years after certain conditions – or "biological triggers" – were met at Lockwood, with subsequent installations required at Shawmut and Weston according to a schedule. *Id.* Permanent downstream passage was required at each dam at the same time that permanent upstream passage became effective. *Id.* However, the first, and linchpin, biological trigger relating to the upstream passage of a substantial number of shad at Lockwood in Waterville by no later than December, 2014, was not met, and as a result none of the KHDG Agreement's requirements for permanent upstream passage at any of the four Kennebec River dams has been triggered. *Id.* at 4-5.

There continues to be no Atlantic salmon passage past the three dams upstream of Lockwood. *Id.* A temporary "trap and truck" operation at Lockwood

transports Atlantic salmon; salmon are "trapped" at an interim facility installed at the Lockwood dam and then "trucked" for release above the fourth dam (Weston). *Id.* This "trap and truck" operation is conducted by MDMR, at the state of Maine's expense, and pursuant to the 2013 BiOp the operation will continue until 2019, upon expiration of the ISPP, *see* 2013 BiOp at 13, though there is neither assurance nor mandate that this program will be funded beyond 2015. *Id.*

### D.   The Gulf of Maine Distinct Population Segment of Atlantic Salmon in the Kennebec River

Historically, there were large Atlantic salmon runs in the United States, particularly in the Kennebec, Connecticut, Merrimack, Androscoggin, and Penobscot Rivers, where there was an aggregate estimated annual return of 300,000 to 500,000 salmon. *Id.* at 16. In the Kennebec alone, historic evidence puts the Atlantic salmon run at well over 216,000 fish, but since European settlement, there has been a steady decline in returning salmon to all of these rivers. *Id.* In 2013, only 611 Atlantic salmon returned to rivers in the United States and only seven salmon returned to the Kennebec. *Id.*

The first dam that returning salmon encounter on passage up the Kennebec River from the Atlantic Ocean is the Lockwood Project in Waterville, Maine. *Id.* Immediately upstream of Lockwood is the Hydro-Kennebec Project. *Id.* Next, about seven miles by river upstream, is the Shawmut Project, followed in 16 river miles further upstream by the Weston Project in Skowhegan, Maine. *Id.* at 16-17. In addition to the obstruction of each dam itself to sea-run fish migration and access to upriver spawning and rearing critical habitat, each of the three dams upstream from

11

Lockwood creates substantial impoundments of slow-moving, elevated temperature water which is hostile to Atlantic salmon.  *Id.* at 17.

While there are additional dams upstream of Weston, the obstructions at the Lockwood, Hydro-Kennebec, Shawmut and Weston dams are uniquely important to the survival and recovery of Atlantic salmon because, just above Weston, the Sandy River enters the Kennebec River main stem.  *Id.* at 17.  The Sandy River is considered one of the finest habitats for the spawning of Atlantic salmon in the GOM DPS, and access to the Sandy is critical to survival and recovery of this endangered species.  *Id.* Without access to the Sandy's spawning and rearing habitat, survival and recovery goals for the GOM DPS of Atlantic salmon will never be met.  *Id.*

At present, the Lockwood Project is the only one of the four dams in issue that is equipped with an interim fish passage facility, although that fish passage facility has never functioned effectively.  *Id.*  Thus, the construction and existence of the four hydroelectric dams in issue, each constructed in the 20th century, have so fully hindered upstream and downstream migration for Atlantic salmon in the critical habitat between the Lockwood Project and the Weston Project that Atlantic salmon can no longer migrate upstream or downstream through this complete stretch of the Kennebec River.  *Id.*  NMFS recognized that hydroelectric dams on the Kennebec "have eliminated or degraded vast, but to date un-quantified, reaches of suitable rearing habitat in the Kennebec . . . watershed[]."  *Id.* at 18 (citing 2013 BiOp at 46).

While the ISPPs contemplate construction of fish passage at the other three dams beginning in 2016, actual attempts at any passage past those dams are  not

contemplated to begin until 2020. *Id.* (citing 2013 BiOp at 141).  Although the 2013 BiOp assumes that "[d]uring the interim period, passage will continue to occur via trap and truck at the Lockwood Project," *id.* citing (2013 BiOp at 141), MDMR's role in handling the fish at Lockwood is not funded after 2015. *Id.*  The 2012 and 2013 BiOps at issue, which appear to rely on an assumption that the MDMR "trap and truck" operation will continue until 2020, do not mandate that the program continue, and do not provide for or explain how the program might continue to be funded should MDMR decide on its own, for any reason, that it must or will be forced to discontinue the program before 2020. *Id.*

## III.   THE CLAIMS IN THE COMPLAINT

As relief, the Plaintiffs ask the Court to declare that "NMFS has violated the requirements of the ESA section 7 and its implementing regulations by arbitrarily, capriciously and without any rational basis making a no-jeopardy/no-adverse modification finding in the [2012 and 2013 BiOps]." *Id.* at 41.  Specifically, they take issue with NMFS determination that "the proposed actions by FERC . . .  are not likely to jeopardize any listed species or destroy or adversely modify their critical habitat" of GOM DPS Atlantic salmon, and assert that NMFS's decision to issue an incidental take statement "is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law." *Id.*

The Plaintiffs request that the Court issue an injunction directing NMFS to: (1) withdraw the 2012 and 2013 BiOps, (2) rescind or vacate the Incidental Take Statements that accompany them, (3) notify FERC of the withdrawal, and (4)

reinitiate consultation with FERC to prepare BiOps that are consistent with the ESA, and not arbitrary, capricious, an abuse of discretion, or not in accordance with law. *Id.* They further request an injunction directing the licensees to: (1) participate in the consultation with NMFS, (2) take no actions that are harmful to the GOM DPS Atlantic salmon, and (3) request FERC revocation of the amendments to the license for the Hydro-Kennebec dam which has already been amended in reliance on the 2012 BiOp. *Id.*

## IV.   THE PARTIES' POSITIONS

### A.   The Defendants' Motion to Dismiss

#### 1.   The Federal Defendants' Motion to Dismiss

The Federal Defendants argue that this Court lacks subject matter jurisdiction to review the 2012 and 2013 BiOps issued by NMFS because the FPA expressly grants the Courts of Appeals exclusive subject matter jurisdiction to review and modify FERC licensing orders. *Fed. Mot.* at 1-2 (citing 16 U.S.C. § 825*l*(b)). They claim that "the law is clear that a BiOp prepared in connection with a FERC licensing proceeding cannot be challenged collaterally under the ESA or APA,[6]" because such a challenge, even if styled as only a challenge to the BiOps, "is, in reality, a challenge to FERC's licensing decision under the FPA, which could affect that action and the jurisdiction of the Court of Appeals." *Id.* at 2.

---

[6]     The Administrative Procedure Act (APA) authorizes courts reviewing agency action to hold unlawful and set aside final agency action, findings, and conclusions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(a). Section 704 of the APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5. U.S.C. § 704.

In support of their argument the Federal Defendants turn to two lawsuits brought by the City of Tacoma, Washington, that sought to challenge a BiOp NMFS had prepared on a FERC licensing decision; the first lawsuit was brought in the United States District Court for the District of Columbia solely against NMFS under the ESA and APA, *City of Tacoma v. NMFS* [*Tacoma I*], 383 F. Supp. 2d 89 (D.D.C. 2005), and the second against FERC in the Court of Appeals for the District of Columbia Circuit under the FPA. *City of Tacoma v. FERC* [*Tacoma II*], 460 F.3d 53 (D.C. Cir. 2006). *Id.* The Federal Defendants note that the district court dismissed the complaint for lack of jurisdiction, finding that the FPA "expressly deprives this Court of subject matter jurisdiction to hear plaintiff's claim," *id.* (citing *Tacoma I*, 383 F. Supp. 2d at 90), and that the D.C. Court of Appeals held that it had original jurisdiction, saying "[a]lthough in other contexts a BiOp is subject to independent review in a proceeding in which the agency issuing the BiOp is a party . . . when a BiOp is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals." *Id.* at 11 (citing *Tacoma II*, 460 F.3d at 76). Thus, the Federal Defendants argue that the *City of Tacoma* decisions "both squarely support dismissal of Plaintiffs' attempted collateral challenge to NMFS' BiOps for lack of subject matter jurisdiction." *Id.* at 11. The Federal Defendants argue that the instant case is indistinguishable not only from the *City of Tacoma* cases, but also from "well-settled Ninth Circuit precedent." *Id.* at 11-13 (listing cases).[7]

---

[7]     The Federal Defendant also argued that because FERC had not then issued an appealable order, the Plaintiffs could not collaterally challenge the 2013 BiOp and the Plaintiffs' lawsuit was

### 2.    The Licensee Defendants' Motion to Dismiss

The Licensee Defendants' assert three distinct claims to dismiss the Complaint: (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) dismissal under Rule 12(b)(7) for failure to join FERC under Federal Rule of Civil Procedure 19; and (3) dismissal under Rule 12(b)(6) for failure to state a claim. *Licensee Mot.* at 1-2.

Regarding subject matter jurisdiction, the Licensee Defendants also turn to the *City of Tacoma* decisions and to the Ninth Circuit caselaw cited by the Federal Defendants, and similarly contend that the Plaintiffs lack subject matter jurisdiction to bring their claim. *Id.* at 7-13. The Licensee Defendants argue that while parties may challenge a BiOp requested by other agencies under other statutes, *see Dow AgroSciences v. NMFS*, 637 F.3d 249, 268 (4th Cir. 2011) (permitting challenge under the APA to a BiOp issued by NMFS pursuant to pending EPA relicensing under the Federal Insecticide, Fungicide, and Pesticide Act (FIFRA)), the only means to challenge a BiOp prepared in the course of a FERC licensing proceedings is review of the decision by the Courts of Appeals. *Licensee Mot.* at 11 (citing *Tacoma II*, 460 F.3d at 76). The Licensee Defendants buttress this point by observing that the United States Supreme Court clarified in 1958 that 16 U.S.C. § 8251(b) provides "the specific, complete and exclusive mode for judicial review of [FERC] orders." *Id.* at 7 (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)).

---

unripe. *Fed. Mot.* at 2, 13. However on May 19, 2016, FERC issued an order amending the FPA licenses for the Lockwood, Shawmut, and Weston projects, incorporating the terms and conditions from the 2013 BiOp and the ISPP. *Fed. Suppl. Mot.* Attach. 1 *May 19, 2016 FERC Order* (ECF No. 29) (*FERC Order*). The FERC order obviates these arguments.

The Licensee Defendants also assert that the Plaintiffs' claims must be dismissed under Rule 12(b)(1) because they failed to exhaust administrative remedies by not pursuing the "FPA-mandated administrative review process with FERC," *id.* at 14, and also because the Plaintiffs failed to comply with the ESA's 60-day notice requirement under the statute's citizen suit provision. *Id.* at 14-15.

As to their Rule 12(b)(7) motion, the Licensee Defendants put forth three reasons that FERC is a required party in these proceedings under Federal Rule of Civil Procedure 19. *Id.* at 15. First, they assert the Court cannot accord complete relief to Plaintiffs without FERC as a party to the lawsuit, because any defect in the 2012 BiOp cannot be remedied without FERC involvement and because the 2013 BiOp is currently under review by FERC as to whether it will be incorporated in the projects' licenses.[8] *Id.* at 15-16. Second, they argue that FERC's ability to protect its interests in this dam licensing issue is, as a practical matter, impaired or impeded without being a party in the lawsuit, as the agency has strong interests in project licenses that it has already issued and finalizing license proceedings currently before it. *Id.* at 16-17. The third argument is that without FERC present, the Licensee Defendants may be left with inconsistent obligations, as they will still be required to participate in consultations with FERC under the FPA, in addition to "whatever relief this Court might order" in this lawsuit. *Id.* at 17.

Finally, the Licensee Defendants posit three reasons that the Plaintiffs' claims should be dismissed under Rule 12(b)(6). First, they argue that the Plaintiffs have

---

[8]     Although FERC issued its Order on May 19, 2016, the Licensee Defendants' point may still be valid given the post-order conditions FERC attached.

no basis in the APA to seek review of the two BiOps because "the APA does not authorize courts to review the conduct of nonagency defendants," such as the Licensee Defendants, "[n]or does the APA authorize courts to review the conduct of NMFS as an agency providing an opinion under the FPA, the review of which not only is available in, but is exclusively limited to, the Court of Appeals." *Id.* at 18.  Second, they allege that the Plaintiffs have not adequately alleged a violation under the ESA's citizen suit provision as to NMFS's actions in administering the ESA, *id.* at 18-19, and third, the Licensee Defendants contend that the allegations regarding take, jeopardy, and dam removal do not allow for a reasonable inference that Licensee Defendants or NMFS are liable under the ESA or the APA.  *Id.* at 19-20.

### B.    The Plaintiffs' Response to the Defendants' Motions to Dismiss

The Plaintiffs' assert that *Bennett v. Spear*, 520 U.S. 154 (1997) "squarely answers" that this Court has subject matter jurisdiction, as the Supreme Court held that a BiOp "prepared under the ESA by one federal administrative agency for the use of another constitutes 'final agency action' reviewable in federal district court under the" APA.  *Pls.' Opp'n* at 6.  Additionally, the Plaintiffs turn to the Fourth Circuit's decision in *Dow Agrosciences* which found that *Bennett* adheres "when a court of appeals judicial review statute exists *governing only review of decisions by the action agency*, *not decisions of the consulting agency like NMFS*," finding that "FIFRA's court of appeals judicial review statutes did not remove jurisdiction of the district court to review a NMFS BiOp resulting from a section 7 ESA consultation with the [EPA]."  *Id.* (emphasis provided by Plaintiffs).  The Plaintiffs note that the

Federal Defendants fail to acknowledge that "the key distinction explained by the Fourth Circuit in *Dow Agrosciences* . . . is that the *City of Tacoma* matter involved a challenge to the action agency's final order in reliance on a BiOp," not the consulting agency's BiOp itself. *Id.* at 6.

The Plaintiffs contend that a BiOp is a final agency action, distinct from any final order of FERC. *Id.* (citing *Dow Agrosciences*, 637 F.3d at 268). Moreover, NMFS' BiOps, the Plaintiffs argue, "have immediate and independent legal consequences that cannot be changed on later review of the [FERC action], even if [FERC] relies on the BiOp." *Id.* at 10 (quoting *Dow Agrosciences*, 637 F.3d at 265). As such, the Plaintiffs contend that as the final agency action of NMFS, judicial review of the 2012 and 2013 BiOps in this Court is authorized under the APA. *Id.* at 8.

Moreover, the Plaintiffs argue that the plain language of the FPA does not support the Defendants' exclusive jurisdiction argument, and that there is also "a strong presumption that Congress intends to allow for judicial review of final agency actions," and "clear and convincing evidence" is required to show that Congress intended otherwise. *Id.* at 9-10 (quoting *Dow Agrosciences*, 637 F.3d at 267). What is more, the Plaintiffs explain that the BiOps have "powerful coercive effect" and are "virtually determinative," and though an action agency may choose to act contrary to the BiOp's recommendation, this happens very rarely, as the agency and its employees would lose the "safe harbor" under the ESA and become subject to substantial civil and criminal penalties, including prison. *Id.* at 10 (quoting *Dow Agrosciences*, 637 F.3d at 266).

19

Further, the Plaintiffs note the *Dow Agrosciences* Court found that when a Court of Appeals reviews FERC's reliance on a NMFS BiOp, the court's review "would not be the same as if the district court would review the BiOp itself directly under the APA," as "when a court of appeals reviews the [action agency's] reliance on a BiOp, it would determine only whether the [action agency's] reliance was arbitrary and capricious. But only by direct judicial review by the district court under the APA could the BiOp's findings and conclusions themselves be challenged." *Id.* at 12 (quoting *Dow Agrosciences*, 637 F.3d at 266). The Plaintiffs argue that federal wildlife agencies (e.g., NMFS or USFWS) acting as ESA consulting agencies should not be insulated from review of their final agency actions under the ESA in cases where the action agency is governed by a court of appeals judicial review statute, and that following the Defendants' argument creates an anomaly, for example, that judicial review of NMFS BiOps arising from consultations with the U.S. Bureau of Reclamation as "action agency" (in its role as manager of federal dams and irrigation projects) would be in district court, whereas cases challenging NMFS BiOps involving FERC's regulatory power over non-federal dams would be restricted to the Courts of Appeals. *Id.* at 13.

The Plaintiffs also note that in *Tacoma II* the action agency's reliance on the BiOp was challenged in the Court of Appeals for review of the action agency's final order, whereas here, similar to *Dow Agrosciences*, the Plaintiffs seek judicial review of the 2013 BiOps prior to the action agency's final decision while challenging the 2012 BiOp on the grounds that it has the same inherent deficiencies in the 2013 BiOp

20

and cannot be afforded "scrutiny in isolation from the 'legal regime'" set by the 2013 BiOps. *Id.* at 14 (citing *Bennett*, 520 U.S. at 169). They submit that the *Dow Agrosciences* Court noted that, following the lead of *Bennett*, courts have allowed judicial review of BiOps under these circumstances, including the D.C. Circuit. *Id.* (listing cases). Relatedly, the Plaintiffs contend that when considering the D.C. Circuit's statement that "when a BiOp is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals," *Tacoma II* at 77, *Dow Agrosciences* found that the use of the word "only" was dictum that did not overrule *Bennett* and "the substantial body of case law recognizing that BiOps issued by consulting agencies like NMFS are final agency action subject to independent review." *Id.* at 15 n.5.

Citing the policy interests of the ESA "to prioritize both survival and restoration of endangered species," the Plaintiffs argue delay cannot be afforded "in waiting for an action agency decision based on flawed findings and decisions" of the NMFS BiOp." *Id.* at 18. Further, they note that "an action filed in the court of appeals against FERC to expedite its decision is of little use in this context, since it makes little sense to seek the action agency's expedited reliance on BiOps that Plaintiffs already contend are flawed under legal standards governing NMFS's performance and unique role." *Id.*[9]

---

[9]   The Plaintiffs also respond to the Federal Defendants' ripeness argument, arguing that the issuance of the BiOps are a sufficient trigger for legal action, but as FERC has now issued its Order, the Court had not included those arguments in this synopsis. *See Pls.' Opp'n* at 19-20.

Plaintiffs additionally reject any exhaustion of administrative remedies argument, again relying on the *Bennett* Court's finding that a BiOp is of great significance and "has a powerful coercive effect" on FERC, *id.* at 21 (citing *Bennett*, 520 US at 169-70), and there is no administrative remedy against NMFS that remains for exhaustion.  *Id.* at 22.   Also, the Plaintiffs contest the Licensee Defendants' argument that Rule 19 requires joinder of FERC as an "indispensable party," asserting that *Dow Agrosciences* found that "the action agency [EPA] was not an indispensable party to the APA action challenging the NMFS BiOp," and that "[o]ther such cases have not required joinder of the action agency in challenges to wildlife agency biological opinions or ITS's."  *Id.* (collecting cases).

Lastly, the Plaintiffs contest the Licensee Defendants' 12(b)(6) motion, arguing that as parties to the agency proceedings under review in this Court, "these Defendants were included in this action seeking judicial review," and that "[i]n a sense, the action is directly against them too, because they or one or more of their subsidiaries, actually engaged in part of the agency action in issue (the development of the Biological Assessments and the "interim species protection plans" that NMFS adopted in issuing the Kennebec BiOps and ITS's)."  *Id.* at 23-24.  As to the assertion that the Plaintiffs can find no relief under the citizens' suit provision of section 11 of the ESA, first the Plaintiffs state that they are not bringing this case as a citizens' suit, *id.* at 8 n.4, and second that the APA clearly provides judicial review of the underlying governmental decisions relating to the ESA (i.e., "that some take may legally occur without constituting jeopardy or adverse modification, as long as

22

reasonable and prudent measures (RPM's) are put in place to minimize the amount of take"). *Id.* at 25.

### C. The Defendants' Reply

#### 1. The Federal Defendants' Reply

The Federal Defendants argue that the Plaintiffs "have not, and cannot," distinguish the body of caselaw interpreting the FPA to grant the Courts of Appeals exclusive jurisdiction to hear challenges to BiOps prepared in the course of a FERC licensing proceeding. *Fed. Reply* at 2. They assert that the "Plaintiffs fail to even mention the Supreme Court and district court *City of Tacoma* decisions in their opposition," while "they plainly mischaracterize" *Tacoma II* in asserting that the D.C. Circuit only considered FERC's reliance on the BiOp, and not the merits of the BiOp itself, "which is flatly incorrect," contending that the D.C. Circuit in fact "considered at length the City's substantive challenges to the BiOps under the APA's 'arbitrary and capricious' standard of review . . . [and concluded that] 'we reject Tacoma's challenge to the validity of the BiOps, and we find no error in FERC's reliance on them.'" *Id.* at 4 (quoting *Tacoma II*, 460 F.3d at 78). They also maintain that when the D.C. Circuit wrote "when a BiOp is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals," the language was not dictum, as the Plaintiffs argue, but rather the basis for its holding that it had original jurisdiction to review the validity of the BiOp." *Id.* at 4-5 (citing *Tacoma II*, 460 F.3d at 76).

Likewise, the Federal Defendants argue *Bennett* does not establish collateral jurisdiction for district courts, submitting that after *Bennett* lower courts "have continued to hold unanimously that judicial review of BiOps on FERC licensing decisions can occur only in the courts of appeals pursuant to the FPA's exclusive judicial review provision," as *Bennett* held that a BiOp was final agency action under the APA "where *no other statute* provided an adequate remedy." *Id.* at 7 (quoting *Bennett*, 520 U.S. at 175). They quote the D.C. Circuit's explanation that "[a] party cannot bring a freestanding APA suit when Congress has specified a different judicial review procedure 'relevant to the subject matter,' so long as that congressionally specified review procedure is 'adequate.'" *Id.* (quoting *Cohen v. United States,* 650 F.3d 717, 738 (D.C. Cir. 2011) (citing APA, 5 U.S.C. §§ 703 and 704)).

The Federal Defendants further argue that *Dow Agrosciences* does not support collateral jurisdiction for a district court. *Id.* at 8. First, they argue *Dow Agrosciences* is an outlier and contradicts the "overwhelming authority" in non-FPA caselaw, *id.* at 8 (listing cases), "that the specific judicial review provision of an action agency's enabling statute governs regardless of whether the plaintiff has: (1) pled its claims against the action agency under a more general statute; or (2) challenged another agency's interrelated action." *Id.* at 9. Second, they note the statute at issue in *Dow Agrosciences*, FIFRA, is fundamentally different than the FPA because it "expressly bifurcates jurisdiction between the courts of appeals and the district courts," whereas the FPA reserves jurisdiction in the Courts of Appeals for all claims that inhere to FERC orders. *Id.* Third, they contend that the facts in *Dow Agrosciences* are

24

fundamentally different than they are here, as unlike the EPA in *Dow Agrosciences*, in this case FERC has acted on the BiOps, and thus the BiOps are inherent issues in FERC's orders.  *Id.* at 9-10.   Fourth, the Federal Defendants assert that *Dow Agrosciences* is based on a clearly erroneous legal premise that review of the BiOp could not be obtained in a Court of Appeals, as caselaw supports that consulting agencies can be parties in Courts of Appeals decisions and a Court of Appeals can directly review the merits of a BiOp.  *Id.* at 11.

Finally, the Federal Defendants argue that the Court need not decide whether the 2013 BiOp and ITS are ripe for review or whether the Plaintiffs have standing to challenge them, as they have not argued that 2013 BiOp is unripe, asserting that the Plaintiffs' argument otherwise is a "red herring."   *Id.* at 14.   Furthermore, they contend the Court need not decide whether the 2013 BiOp and ITS "have immediate and independent effect and/or cause Plaintiffs the requisite injury-in-fact to establish standing because . . . it should dismiss Plaintiffs' complaint pursuant to the exclusive review provision of the FPA irrespective of these issues."  *Id.* at 14-15.

### 2.    The Licensee Defendants' Reply

The Licensee Defendants assert that the Plaintiffs' heavy reliance on *Bennett* and *Dow Argosciences* is misplaced, as neither decision dealt with the specific issue of whether the Courts of Appeals have exclusive subject matter jurisdiction to review BiOps issued in the course of FERC licensing proceedings under the FPA.  *Licensee Reply* at 3.  Specifically, with *Dow Agrosciences*, the Licensee Defendants put forth three reasons that the Plaintiffs' reliance on a case focused on FIFRA's jurisdictional

framework is flawed.  *Id.* at 4.  First, they argue judicial review language in FIFRA is critically different from the FPA, as FIFRA contains two sections that explicitly provide for district court review, while the FPA contains no such provisions.  *Id.* Second, they contend that in *Dow Agrosciences* the Fourth Circuit expressly distinguished its holding from cases such as *Tacoma II* to "the unique, case-specific circumstances of the BiOps prepared for EPA's FIFRA insecticide registration process."  *Id.* at 5.  Third, they maintain that the EPA's review of the BiOp under FIFRA in *Dow Agrosciences* did not allow the EPA or a Court of Appeals to substantively review the underlying BiOp, while federal courts examining FPA review of BiOps have "uniformly concluded that FERC or a court of appeals may substantively review the underlying BiOp under Section 825l(b)."  *Id.* at 6.

The Licensee Defendants further argue that for this Court to exercise subject matter jurisdiction would contravene congressional intent regarding licensing under the FPA to provide "a single and expeditious procedure for resolving licensing disputes," to avoid "the redundancy of compiling separate records before the agency and the trial court," and prevent piecemeal challenges to portions of a licenses that may create "duplication and inconsistency."  *Id.* at 8.  Moreover, they assert courts have consistently held that, "where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter. *Id.* at 9 .

Regarding standing, the Licensee Defendants argue that the Plaintiffs have failed to allege an actionable injury from the BiOps and cannot obtain the relief they

seek. *Id.* at 9. They contend that because the KHDG Agreement was premised upon the parties' understanding that the dams would remain in place, they cannot argue they have an actionable injury from the dams' continued existence. *Id.* The Licensee Defendants also assert that because NMFS "simply carried out its statutorily-mandated duty to provide FERC with an opinion regarding the impact of the proposed action" the Plaintiffs failed to articulate how NMFS caused the injury of which they complain," and also that if a Court were to order NMFS to issue new BiOps it would not redress the alleged injury, as the BiOps would "inevitably reach the same conclusions on jeopardy and critical habitat because Plaintiffs have not offered a shred of scientific evidence (or, for that matter, *any* new data or information) to suggest that the outcome would be different." *Id.* at 10-11 (emphasis provided by Defendants). The Licensee Defendants further maintain that the Plaintiffs have failed to exhaust their administrative remedies through FERC, which is required by the terms of the KHDG Agreement and under FPA, *id.* at 13, while asserting that the Plaintiffs fail to state a claim under the APA because, contrary to their argument, the ESA specifically contemplates that some take may legally occur without constituting jeopardy or adverse modification, as long as RPMs are put in place to minimize the amount of take. *Id.* at 13-14.

### D.    Motions to Supplement

On May 19, 2016, FERC issued an order amending the FPA licenses for the Lockwood, Shawmut, and Weston projects, incorporating the terms and conditions from the 2013 BiOp and the ISPP. *Fed. Suppl. Mot.* Attach. 1 *May 19, 2016 FERC*

*Order* (ECF No. 29) (*FERC Order*).  The Defendants filed motions to supplement their motions to dismiss to address the impacts of the FERC Order on the lawsuit, which this Court granted.  *See Fed. Suppl. Mot.*; *Licensee Suppl. Mot.*; *Order Granting Mots. to Suppl.*; *Suppl. Order.*

### 1.   Defendants' Motion to Supplement

The Federal Defendants argue the FERC Order affects their motion to dismiss in two ways.  First, they contend the FERC Order vitiates the Plaintiffs' central claim of subject matter jurisdiction over the 2013 BiOp, as it "eliminates even Plaintiffs' strained comparison between EPA's failure to act under FIFRA in *Dow* [*Agrosciences*] and FERC's heretofore failure to act under the FPA." *Fed. Suppl. Mot.* at 3-4.  Second, they contend that the FERC Order does not render the Plaintiffs' challenge to the 2013 BiOp ripe, as the "proper moment to determine the ripeness of Plaintiffs' cause of action is not now, but the time of the complaint." *Id.* at 4

The Licensee Defendants charge that as the 2012 BiOp and the 2013 BiOp "now stand on procedurally identical footing in the FERC consultation process," there are three new implications for the Plaintiffs' lawsuit. *Licensee Suppl. Mot.* at 2.  First, unlike in *Dow Agrosciences*, here FERC (the action agency) has acted upon the consulting agency's BiOp in issuing the FERC Order. *Id.*  Second, they argue the Plaintiffs have failed to exhaust their administrative remedies by not seeking a rehearing after issuance of the FERC Order under Section 313(a) of the FPA or through an appeal in the Courts of Appeals pursuant to 16 U.S.C. § 825l. *Id.* at 3. They also assert the Plaintiffs' actions breached the KHDG Agreement by failing to

handle the issue "through the FERC Process." *Id.* (quoting KHDG Agreement at 2, 8). Lastly, the Licensee Defendants contend the FERC Order highlights the Plaintiffs' failure to join FERC as a required party under Federal Rule of Civil Procedure 19, as FERC has incorporated all four projects' BiOps into the project licenses and "complete relief cannot be accorded . . . without FERC's involvement." *Id.*

### 2.    Plaintiffs' Response to Motions to Supplement

The Plaintiffs contend they never argued that their position on jurisdiction hinges on "the lack of a final order from FERC in the dam licensing proceedings involving Lockwood, Shawmut, and Weston," and their position has been instead that "even though appellate courts have jurisdiction to review FERC orders, that review is not an adequate alternative to APA review of a BiOp and ITS issued by another agency." *Pls.' Suppl. Opp'n* at 3. Additionally, they argue that the FERC Order "is precisely what Plaintiffs predicted and what the *Dow Agrosciences* court observed – the FERC Order, as an order of the action agency, very rarely if ever chooses to act contrary to the NMFS BiOp and ITS," and "expressly defers to NMFS, and adopts the erroneous final agency action of NMFS in issuing a license amendment." *Id.* Further, the Plaintiffs again assert that though 16 U.S.C. § 825l of the FPA provides for judicial review by the Courts of Appeals for FERC decisions, there is no reference in § 825l to NMFS final agency decisions, and that the caselaw relied on by the Defendants has been "eclipsed" by *Dow Agrosciences* which held that FIFRA's Courts

of Appeals review statute was not an adequate alternative to district court review of a NMFS BiOp. *Id.* at 4.

The Plaintiffs turn to the May 31, 2016 Supreme Court decision of *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016) which rejected the Army Corps argument that, "even if final, there [exists] an adequate alternative to APA review in court" of an permitting agency's final determination, and when applied to the present case the Supreme Court's approach requires "little basis for inferring adequate review from either the ESA (which has no express provision for appeal of BiOps that are final agency action) or the FERC review statute (which makes no reference to appeal of other agency decisions)." *Pls.' Suppl. Opp'n* at 5. The Plaintiffs argue that "*Hawkes* thus refocuses the analysis on the APA presumption that federal review in the district courts is required, because such review in the context of a challenge to a separate agency's action or permitting process is not an adequate alternative." *Id.* at 6.

On the issue of appellate review inadequacy, the Plaintiffs contend that *Dow Agrosciences* is instructive, as the focus and standard of review for a district court reviewing a BiOp under the APA is "critically different" than the Courts of Appeals review of the FERC Order. *Id.* As an example, they note the recent District of Oregon decision of *National Wildlife Federation v. National Marine Fisheries Service*, No. 3:01-cv-00640-SI, 2016 U.S. Dist. LEXIS 59195, 2016 WL 2353647 (D. Ore. May 4, 2016), where the district court concluded that the NMFS acted arbitrarily and capriciously when it issued a BiOp concluding that the Federal Columbia River Power

System complied with the ESA.  *Id.*  As the case was decided on direct judicial review under the APA, the Plaintiffs argue "[t]here is neither policy reason nor statutory support for distinguishing that precise nature of NMFS final agency action . . . from the present case, based on the mere fact that the action agencies in *National Wildlife Federation* happened to be the U.S. Army Corps of Engineers and the U.S. Bureau of Reclamation," while the action agency in this case "happens to be FERC."  *Id.* at 6-7.

Lastly, the Plaintiffs argue that instead it was the Licensee Defendants that breached the terms of the KHDG Agreement, as by the Agreement's terms the parties were to meet to attempt to reach consensus on fish passage solutions if a key biological trigger condition was not met by December, 2014, but by the time this provision became effective "it was realistically too late to consider alternatives and attempt consensus: FERC, NMFS, and the Licensee Defendants had already settled on a plan for Atlantic salmon which was incorporated into the BiOps and ITS's finalized in 2013 and 2014."  *Id.* at 7.

### 3.  Defendants' Reply

The Federal Defendants rebuff the Plaintiffs' assertion that Courts of Appeals cannot provide "meaningful judicial review" of BiOps on their merits in FPA cases, pointing to D.C. Circuit and Ninth Circuit decisions that addressed the merits of a NMFS BiOp on review from a FERC license amendment order.  *Fed. Suppl. Reply* at 2-4 (citing *Tacoma II*, 460 F.3d at 76, 78; *Cal. Sportfishing Prot. Alliance v. FERC*, 193 F. App'x 655 (9th Cir. 2006)).

The Federal Defendants also argue that *Dow Agrosciences* is inapposite, as the 2012 and 2013 BiOps are now part of the respective FPA licenses and as such Supreme Court precedent dictates that "all issues inhering in the controversy" and "all objections" to the BiOps "must be made in the Court of Appeals or not at all." *Id.* at 5 (quoting *City of Tacoma*, 357 U.S. at 336). The Federal Defendants re-raise their argument that *Dow Agrosciences* is not relevant to the matter, as it concerned FIFRA's "fundamentally-district judicial review provision" that bifurcates jurisdiction between the district courts and the courts of appeals and "can only be read reasonably as being limited to the unique set of law and facts presented in that case." *Id.* at 5-6.

Lastly, the Federal Defendants assert that the new caselaw provided by the Plaintiffs is "fundamentally inapposite" to this case. *Id.* at 7. Regarding *Hawkes*, they argue that the issue here is not whether a BiOp can be challenged in court, but in which court, and the Plaintiffs' reliance on the case for the "APA presumption of reviewability" is "misplaced because it depends on their erroneous premise that the [2012 and 2103] BiOps will escape judicial review unless this Court exercises jurisdiction over them." *Id.* at 7-8. As for *National Wildlife Federation*, they assert that, despite the Plaintiffs' contention otherwise, "the statutory and policy reasons" for distinguishing judicial review of a NMFS final agency action in a FERC action versus a U.S. Army Corps of Engineers action "are abundant and manifest." *Id.* at 9. The Licensee Defendants raised similar arguments regard *Hawkes* and *National Wildlife Federation*. *See Licensee Suppl. Reply* at 8-10.

The Licensee Defendants again assert that the FERC Order definitively determines that jurisdiction resides solely in the Courts of Appeals, as *Dow Agrosciences* dealt with FIFRA, not the FPA, which has fundamentally different review provisions. *Id.* at 2-3. Moreover, they argue that *Dow Argosciences* expressly distinguished the facts in that case, noting that had the EPA issued "an order following a public hearing, its order [would be] reviewable exclusively in the courts of appeals" as an action agency's final order, *id.* at 4 (citing *Dow Agrosciences*, 637 F.3d at 262), and because FERC has now incorporated all challenged BiOps into FERC license amendments, "the procedural circumstances that might have allowed judicial review of a BiOp in district court – no final order from an action agency – no longer exist, and, the Court of Appeals has exclusive subject matter jurisdiction to review Plaintiffs' claims." *Id.*

Additionally, the Licensee Defendants contend that the Courts of Appeals' exclusive jurisdiction to review the BiOps is entirely consistent with the APA, as the APA anticipates statutory preclusion of judicial review under the APA, *id.* at 5 (citing 5 U.S.C. § 701), and, as discussed, the FPA already provides an "adequate remedy" to satisfy APA section 704  through judicial review in the Courts of Appeals. *Id.* (citing *Tacoma II*, 460 F.3d at 76). They further note that the Plaintiffs' argument that appellate review is inadequate because FERC may defer to NMFS' expertise rather than conduct its own analysis of the BiOps "ignores the basic framework established under Section 10 of the ESA for action agency consultations with expert

resource agencies; the action agency 'need not undertake a separate, independent of the issues addressed in the BiOp.'" *Id.* at 6 (quoting *Tacoma II*, 460 F.3d at 75).

## V.   STANDARD OF REVIEW

### A.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only those powers specifically granted to them by either the U.S. Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under Rule 12(b)(1), a court must dismiss a case over which it lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  "The plaintiff, as the party asserting subject matter jurisdiction, has the burden of demonstrating its existence." *Portland Pipe Line Corp. v. City of S. Portland*, No. 2:15-CV-00054-JAW, 2016 WL 589857, at *14 (D. Me. Feb. 11, 2016) (citing *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996)).  "To meet this burden, the proponent must clearly establish the grounds upon which the court may properly exercise jurisdiction." *Natural Res. Council of Maine v. Int'l Paper Co.*, 424 F. Supp. 2d 235, 243 (D. Me. 2006).  "Nevertheless, the complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts." *Tacoma I*, 383 F. Supp. 2d at 91 (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B.   Materials Outside the Proceedings

For a motion pursuant to Rule 12(b)(1), parties may rely on extra-pleading materials. *Sweetser v. Netsmart Techs., Inc.*, 558 F. Supp. 2d 108, 110 (D. Me. 2008); *United States v. Baxter*, Civ. No. 1:10-cv-00435-JAW, 2011 U.S. Dist. LEXIS 55277,

2011 WL 1988437, at *2 (D. Me. May 23, 2011).  A court may therefore consider "whatever evidence has been submitted" as exhibits to a Rule 12(b)(1) motion.  *Baxter*, 2011 U.S. Dist. LEXIS 55277, at *7 (quoting *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996)).

## VI.   DISCUSSION

### A.   Endangered Species Act

Section 7(a)(2) of the ESA requires federal agencies to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence" of any listed species or result in the "destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2).  The ESA's implementing regulations outline a detailed interagency consultation process whereby agencies proposing to take an action, or "action agencies," consult with the appropriate expert "consulting agency" to, among other things, analyze the potential impacts of a proposed action on ESA-listed species and their critical habitat. *Id.*  In this case the action agency is FERC, and its potential action is the modification of the dam licenses at issue here.  Because this action may affect a listed species, the action agency must prepare and provide to the appropriate consulting agency, here NMFS,[10] a biological assessment of the effects of the proposed action on listed species and on designated

---

[10]     The Secretary of Commerce (delegated to NMFS) administers the ESA with respect to marine and anadromous species.  16 U.S.C. § 1532(15); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 586 n.3 (1992).  NMFS and the USFWS jointly administer the ESA as it applies to Atlantic salmon.  NMFS has the lead for ESA activities and actions to address dams.  74 Fed. Reg. 29,344, 29,358 (June 19, 2009).

critical habitat.[11]  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.12(a).  Formal consultation concludes with the issuance of a written BiOp by the consulting agency that assesses the likelihood of the proposed action to jeopardize the species or destroy or adversely modify its critical habitat.  50 C.F.R. §§ 402.14(g), (h)(3).

If the BiOp concludes that the action is likely to cause jeopardy or adverse modification of critical habitat, the consulting agency must suggest reasonable and prudent alternatives (RPAs) that it believes would avoid jeopardy or adverse modification and that can be implemented by the action agency.  16 U.S.C. § 1536(b)(3)(A).   If the consulting agency concludes that jeopardy or adverse modification will not result, or that the RPAs would avoid jeopardy or adverse modification but that the proposed action will result in incidental "taking"[12] of individual members of listed species, the consulting agency can exempt takings that occur incidentally to the federal action in an incidental take statement (ITS) attached to the final BiOp.  16 U.S.C. §§ 1536(b)(4)(iv), 1536(o)(2); 1532(19); 1538(a).

The action agency is not required to adopt the BiOp; if it chooses to comply with the terms and conditions of the BiOp, the action agency and its employees become exempt from prosecution for any violation of the ESA, thus providing a "safe harbor."  16 U.S.C. § 1536(o)(2).  The action agency can also choose not to comply with

---

[11]     The action agency is required to provide NMFS with the "best scientific and commercial data available or which can be obtained during consultation for an adequate review of the effects that an action may have upon listed species or critical habitat." 50 C.F.R. § 402.14(d).

[12]     Section 9 of the ESA prohibits "take" of listed species by anyone, including federal agencies. 16 U.S.C. § 1538.  "Take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).  If a consulting agency reaches a no-jeopardy/no-adverse modification determination for a proposed action, it may also issue an incidental (i.e., authorized) take permit for any take of a listed species that is likely to occur as a result of the federal action.  50 C.F.R. § 402.14(i).

the BiOp, but in doing so loses its safe harbor protection.  The action agency cannot alter either the BiOp or the safe harbor created by the BiOp.  *See Bennett*, 520 U.S. at 169-70.

### B.     Federal Power Act

The FPA is "a complete scheme" for federal regulation and development of water power resources, authorizing FERC to issue licenses for hydroelectric projects, including dams, reservoirs, and other works, to develop and improve navigation, and to develop and use power.  *First Iowa Hydro-Electric Coop. v. Fed. Power Comm'n*, 328 U.S. 152, 180 (1946); 16 U.S.C. §§ 791-828c.  A FERC license is required before any entity may build a hydroelectric project on, among other things, any navigable stream or on "any part of the public lands and reservations of the United States."  16 U.S.C. § 797(e).  FERC's responsibilities under the FPA include issuing licenses for the construction of new projects and the continuation of existing projects, and overseeing all ongoing project operations, including dam safety inspection and environmental monitoring.  *See Coal. for Fair and Equitable Reg'n of Docks on Lake of the Ozarks v. FERC*, 297 F.3d 771, 774-75 (8th Cir. 2002).  Hydropower licenses may be amended upon the mutual agreement of the licensee and the Commission.  16 U.S.C. § 799.

### C.     Subject Matter Jurisdiction

The FPA requires FERC to comply with the ESA and the APA, but in doing so establishes a procedure that governs review of its licensing decisions.  *See* 16 U.S.C. § 8251(b).  Specifically, the FPA states:

> [a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. . . .  Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.

*Id.*  The Supreme Court held that "[s]o acting, Congress in [§] 313 [of the FPA] prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders" and that "any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission . . . by the Court of Appeals which 'shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part,'" and "thereby necessarily preclude de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review."  *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336 (1958). The Court concluded "[t]his statute is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent," *id.* at 335-36, and:

> [h]ence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all.  For Congress, acting within its powers, has declared that the Court of Appeals shall have 'exclusive jurisdiction' to review such orders, and that its judgment 'shall be final,' subject to review by this Court upon certiorari or certification.

*Id.* at 336-37.

The Plaintiffs argue that the special-review provisions of the FPA do not apply to this suit because it was filed against NMFS, not FERC, its cause of action arose under the ESA and APA, not the FPA, and that the 2012 and 2013 BiOps' no-jeopardy/no-adverse modification findings were made arbitrarily, capriciously and without any rational basis. *See* Section III, IV(B), *supra*. They emphasize they are not challenging the ultimate licensing decision made by FERC, but instead NMFS's alleged failure to comply with the ESA and APA. In doing so they claim a statutory basis for bringing the suit under federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Compl.* at 13.

The Court is not persuaded by the Plaintiffs' arguments. The First Circuit has not addressed this issue, and as such the Court turns to other courts for guidance. Specifically, there are strong parallels between the facts here  and those presented to the District Court of the District of Columbia in *Tacoma I*; there, NMFS issued a final BiOp for the Cushman Hydroelectric Project on the North Fork of the Skokomish River in the state of Washington, concluding that, subject to certain environmental conditions, FERC's licensing renewal of the project was not likely to jeopardize the continued existence of endangered salmon. *Tacoma I*, 383 F. Supp. 2d at 91. The City of Tacoma appealed the FERC licensing decision to the D.C. Court of Appeals under the FPA (*Tacoma II*) and simultaneously filed a lawsuit in the D.C. District Court challenging the NMFS Cushman Project final BiOp under the ESA and APA (*Tacoma I*). *Id.* In *Tacoma I* the D.C. District Court dismissed the complaint, finding that the FPA "expressly deprives this Court of subject matter jurisdiction to hear

plaintiff's claim," *id.* at 90, describing the City of Tacoma's suit as "a thinly veiled collateral attack on the FERC licensing process," explaining that "[s]tyling its complaint as an independent action against the NMFS does not enable the City of Tacoma to evade the clear jurisdictional provision of the FPA . . . and Congress's clear intent in enacting the special FPA review process." *Id.* at 93 (internal citations omitted).

The D.C. Court of Appeals arrived at a similar conclusion when addressing the City of Tacoma's simultaneous challenge to FERC's licensing decision, finding that under the FPA:

> [a]lthough in other contexts a BiOp is subject to independent review in a proceeding in which the agency issuing the BiOp is a party . . . when a BiOp is prepared in the course of a FERC licensing proceeding, the *only* means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals. Accordingly, Tacoma properly brings this challenge as part of the present proceeding.

*Tacoma II*, 460 F.3d at 76 (internal citations omitted) (emphasis added); *accord Ala. Power Co. v. FERC*, 979 F.2d 1561 (D.C. Cir. 1992) (exercising jurisdiction under the FPA to review claims that FERC's orders violated Sections 7(a)(2) or 7(a)(4) of the ESA).

Furthermore, *Tacoma I* and *Tacoma II* mirror Ninth Circuit caselaw that concluded, by its express language, § 825l(b) of the FPA provides exclusive jurisdiction for the Courts of Appeals to review BiOps issued for consideration in FERC licensing orders. *See e.g., Cal. Save Our Streams Council v. Yeutter*, 887 F.2d 908, 911-12 (9th Cir. 1989) (dismissing plaintiff's argument for jurisdictional distinction between a claim against the U.S. Forest Service under the APA

challenging a ESA section 4(e) letter and a claim against FERC under the FPA in a licensing proceed; "even if they attempt to style this as an independent claim against the Forest Service the practical effect of the action in district court is an assault on an important ingredient of the FERC license"); *Southwest Ctr. for Biol. Div. v. FERC*, 967 F. Supp. 1166, 1173 (D. Ariz. 1997) (noting that "[t]he law is clear that any attempt to challenge a license issued by the FERC, however artfully pleaded, will fall under the exclusive jurisdiction of the Federal Courts of Appeal under the FPA"); *Idaho Rivers United v. Foss*, 373 F. Supp. 2d 1158, 1161 (D. Idaho 2005) (plaintiff's claims solely against USFWS for issuing an allegedly inadequate BiOp was dismissed for lack of subject matter jurisdiction, holding that jurisdiction existed exclusively in the Courts of Appeals under the FPA); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1195, 1215 (E.D. Cal. 2008) ("Feather River operations covered by the FERC license are not within the jurisdiction of the district court").

The *Yeutter* Court rejected an argument similar to the one raised by the Plaintiffs.[13] There, the appellants argued that the exclusive review provisions of the FPA were inapplicable "because their suit was filed against the Forest Service and

---

[13]     Plaintiffs note that *Yeutter* did not involve a section 7 consultation under the ESA or a BiOp/ITS, and instead involved a challenge to a FERC license under section 4(e) of the FPA. 877 F.2d at 912. This distinction does not diminish the significance of the Ninth Circuit opinion as applied to the facts here; the Plaintiff's challenge to the U.S. Forest Service's determination in *Yeutter* and the Plaintiffs' challenge here to the NMFS' BiOps are "assault[s] on an important ingredient" of FERC's licensing determination. *See id.* Likewise, the policy reasons enumerated in *Yeutter* for requiring exclusive subject matter jurisdiction before the Courts of Appeals apply with equal force. *Id.*

        Additionally, Plaintiffs contend *Yeutter* has been called into question by *National Wildlife Federation v. NMFS*, 524 F.3d 917 (9th Cir. 2007). The Court disagrees. *National Wildlife Federation* did not involve a BiOp prepared for a proposed FERC action (the action agencies were the U.S. Army Corps of Engineers and the Bureau of Reclamation), it did not address *Yeutter* or its reasoning regarding subject matter jurisdiction under section 825l(b) of the FPA, nor did it analyze the reasons that Congress mandated exclusive subject matter jurisdiction to the Courts of Appeals for challenges to FERC licenses. *Id.*

arose under the provisions of [the National Environmental Policy Act (NEPA) and the American Indian Religious Freedom Act (AIRFA)]," asserting an independent statutory basis for district court jurisdiction, as they were "not attacking the licensing decision made by FERC but instead [were] seeking review only of the Forest Service's failure to follow the procedural and substantive steps outlined in statutes outside the purview of power and energy regulation." *Yeutter*, 887 F.2d at 911. The Ninth Circuit rejected the appellants' argument on a number of grounds: (1) when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation;[14] (2) although characterized as an attack on the Forest Service's actions, the suit was an attempt to restrain the licensing procedures authorized by FERC;[15] and (3) the result would be a "substantial disruption of the statutorily mandated licensing procedure."[16]

The District of Idaho also addressed this issue in *Idaho Rivers*. 373 F. Supp. 2d at 1161. Specifically, Idaho Rivers United (IRU) challenged a BiOp issued by the USFWS that assessed the likely impacts on five species of snails listed under the ESA

---

[14]   "'[T]he rule that a precisely drawn, detailed statute pre-empts more general remedies' flows from the Congressional intent to carve out from the broader scheme a specific exception for this particular type of claim." *Yeutter*, 887 F.2d at 911 (citing *Block v. North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 285 (1983)). "Here, the specific jurisdictional provisions of the FPA which expressly govern review of disputes concerning the licensing of hydroelectric projects control over the general and widely applicable procedures that regulate NEPA, AIRFA and other statutory challenges." *Id.* at 911-12.

[15]   "Ultimately, appellants object to the proposed conditions only because they are included in the FERC license. Thus, even if they attempt to style this as an independent claim against the Forest Service, the practical effect of the action in district court is an assault on an important ingredient of the FERC license." *Yeutter*, 887 F.2d at 912.

[16]   "After the license applicant had initially fought his way through the administrative proceedings, he would then have to grind through the district court and, almost certainly, through the appeal as of right to the circuit court." *Yeutter*, 887 F.2d at 912. "The point of creating a special review procedure in the first place is to avoid duplication and inconsistency. It provides a single and expeditious procedure for resolving licensing disputes." *Id.*

from five hydropower projects being re-licensed by FERC. *Id.* at 1159.  IRU filed suit in the United States District Court for the District of Idaho against USFWS and against the Director of the USFWS's Snake River Office, Jeff Foss, alleging the BiOp violated the ESA. *Id.*  The *Idaho Rivers* Court found "[t]he present case is essentially indistinguishable from [*Yeutter*], as "IRU is seeking, just as [the appellant in *Yeutter* was seeking, to 'restrain the licensing procedures authorized by FERC.'  Thus, [*Yeutter*] dictates that this action be dismissed for lack of subject matter jurisdiction." *Id.* at 1161.  Likewise, in *Southwest Ctr.*, the District Court for the District of Arizona came to the same conclusion addressing similar facts,[17] 967 F. Supp. at 1177, as did the District Court for the Eastern District of California.  *Pac. Coast Fed'n*, 606 F. Supp. 2d at 1215 ("Feather River operations covered by the FERC license are not within the jurisdiction of the district court").

The Plaintiffs' counter this caselaw with *Bennett*, arguing the decision establishes subject matter jurisdiction, as the Supreme Court found a BiOp prepared under the ESA is a final agency action reviewable in federal district court under the APA.  While *Bennett* did hold that BiOps are a final agency action when prepared under the ESA, that case did not involve FERC, a BiOp provided as part of the FPA-

---

[17]     There, the plaintiff sought declaratory and injunctive relief in the district court against FERC and the United States Forest Service alleging violations of the ESA and its implementing regulations regarding the Blue Ridge Hydro Project and its impacts on the Little Colorado River spinedace, a listed endangered species. *Southwest Ctr.*, 967 F. Supp. at 1168.  Regarding claims relevant to this case, the court dismissed the suit against FERC and the Forest Service, holding exclusive jurisdiction for the action against FERC lied with the Courts of Appeals for a challenge to a BiOp, and that because the claim against the Forest Service implicated "FERC's authority under the license, the Court of Appeals has exclusive jurisdiction under the FPA." *Id.* at 1177.

required consultation process, or section 825l(b) of the FPA.[18]  *See Bennett,* 520 U.S.

154.  Indeed, *Bennett* did not address the issue presented here of whether a district

court has jurisdiction to review a BiOp where an exclusive judicial review provision

is involved; instead, *Bennett* held "[t]he APA, by its terms, provides a right to judicial

review of all 'final agency action for which there is no other adequate remedy in a

court.'"  520 U.S. at 175 (citing 5 U.S.C. § 704).  Providing guidance on the purview

of the APA, the D.C. Circuit explained:

> the APA may not be invoked when Congress has specified other judicial
> review procedures.   Section 703 of the APA states: 'The form of
> proceeding for judicial review is the *special statutory review proceeding*
> *relevant to the subject matter in a court specified by statute*,' provided
> that the statutorily specified review proceeding is not "inadequa[te]." 5
> U.S.C. § 703 (emphasis added).  Relatedly, § 704 of the APA provides:
> "Agency action made reviewable by statute and final agency *action for*
> *which there is no other adequate remedy in a court* are subject to judicial
> review." 5 U.S.C. § 704 (emphasis added).
>
> For our purposes, both provisions make the same point: A party cannot
> bring a freestanding APA suit when Congress has specified a different
> judicial review procedure "relevant to the subject matter," so long as that
> congressionally specified review procedure is 'adequate.'

*Cohen v. United States*, 650 F.3d 717, 738 (D.C. Cir. 2011); *accord City of Rochester*

*v. Bond*, 603 F.2d 927, 935 (D.C. Cir. 1979) (finding the APA "codified the

presumption evident in the case law that adequate statutory review is exclusive"); *see*

*also* 5 U.S.C. § 702 ("Nothing herein . . . . confers authority to grant relief if any other

statute that grants consent to suit expressly or impliedly forbids the relief which is

---

[18]      *Bennett* involved "a challenge to a biological opinion issued by the Fish and Wildlife Service in
accordance with the Endangered Species Act . . . concerning the operation of the Klamath Irrigation
Project by the Bureau of Reclamation, and the project's impact on two varieties of endangered fish."
520 U.S. at 157.

sought"). Section 825l(b) of the FPA is the type of statute anticipated by the APA; it provides an exclusive judicial review procedure in the Courts of Appeals for FERC orders, and as the Court will address, this review procedure is "adequate."

Additionally, the Court notes that following the issuance of *Bennett*, a number of courts have found exclusive judicial review of BiOps for FERC licensing decisions rests with the Courts of Appeals pursuant to the FPA. *See Tacoma I*, 383 F. Supp. 2d at 93; *Tacoma II*, 460 F.3d at 76; *Southwest Ctr.*, 967 F. Supp. at 1173; *Idaho Rivers*, 373 F. Supp. 2d at 1161; *Pac. Coast Fed'n*, 606 F. Supp. 2d at 1215. The *Idaho Rivers* Court framed the issue well: "[g]enerally, an agency's issuance of a biological opinion pursuant to the ESA is a final decision subject to judicial review," 373 F. Supp. 2d at 1160 (citing *Bennett*, 520 U.S. at 174); however, when a claim is brought solely against a consulting agency's BiOp issued pursuant to a FERC licensing proceeding, "the practical effect of the action in district court is an assault on an important ingredient of the FERC license." *Id.* at 1161 (citing *Yeutter*, 887 F.2d at 912).

The Plaintiffs' argument for subject matter jurisdiction presses on, however, as they assert the Fourth Circuit's decision in *Dow Agrosciences*, issued after the *City of Tacoma* and Ninth Circuit decisions, holds that *Bennett* is still applicable "when a court of appeals judicial review statute exists *governing only review of decisions by the action agency, not decisions of the consulting agency like NMFS*." *Pls.' Opp'n* at 6 (emphasis in original). *Dow Agrosciences* addressed "whether a 'biological opinion' issued by [NMFS] to the Environmental Protection Agency (EPA) pursuant to the

Fisheries Service's consulting role under the [ESA] is subject to judicial review in the district court under the [APA], 5 U.S.C. § 704." 637 F.3d at 260. The Fourth Circuit concluded that "under *Bennett* [], the Fisheries Service's biological opinion is a final agency action and that deferring judicial review of the biological opinion until the EPA acts on reregistration of [FIFRA] would not provide the manufacturers adequate review of the biological opinion. Accordingly . . . the Fisheries Service's biological opinion is judicially reviewable under § 704 of the APA." *Id.* at 261.

On its face, *Dow Agrosciences* is inapposite. The Fourth Circuit decision did not deal with the FPA or a FERC licensing decision, but with the interaction of the ESA with FIFRA.[19] FIFRA and the FPA have fundamental differences that impact subject matter jurisdiction. As the Fourth Circuit noted, "FIFRA provides for judicial review of the EPA's pesticide registration decisions. . . .  If the EPA issues an order following a public hearing, its order is reviewable exclusively in the courts of appeals. If, however, the EPA has not issued an order following a hearing, its inaction is reviewable in the United States district courts"; this bifurcation in jurisdiction was at issue in *Dow Agrosciences*.[20] 637 F.3d at 262 (citing 7 U.S.C. § 136n(a)) (internal

---

[19]    The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) regulates pesticide distribution, sale, and use, and is administered by the EPA. *See* 7 U.S.C. §§ 136-136y. Before the EPA may register a pesticide under FIFRA, the applicant must show, inter alia, the use of the pesticide "will not generally cause unreasonable adverse effects on the environment." *Id.* at § 136a(c)(5)(D).

[20]    Section 136n of FIFRA states in relevant part:

**(a) District court review**: Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

**(b) Review by court of appeals**: In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who

citations omitted); *see also Ctr. for Biological Diversity v. EPA*, 106 F. Supp. 3d 95, 97 (D.D.C. 2015) ("FIFRA divides judicial review between the District Courts and the Courts of Appeals").   FIFRA expressly bifurcates jurisdiction between the Courts of Appeals and the District Courts.   The FPA provides no bifurcation of subject matter jurisdiction.  *See Southwest Ctr.,* 967 F. Supp. at 1173 (similarly rejecting plaintiffs comparison of section 825l(b) of the FPA to the bifurcated jurisdictional statute of the Northwest Power Act, 16 U.S.C. § 839g(e)).   As the Supreme Court held:   "Congress in [§] 313 [of the FPA] prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders" and "any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission . . . by the Court of Appeals which 'shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part.'" *City of Tacoma,* 357 U.S. at 336.

As discussed, section 704 of the APA provides that "any final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  Interpreting the statute, the *Dow Agrosciences* Court held that in order for a district court to assert jurisdiction over a challenge to a biological opinion it must determine: (1) whether a BiOp is a final agency action, and (2) whether there is another adequate remedy in a court for review of the BiOp." *Dow Agrosciences,*  637

---

will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business. . . .

**(c) Jurisdiction of district courts:** The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this subchapter.

7 U.S.C. § 136n.

F.3d at 264.  Finding that *Bennett* established a BiOp is a final agency action, the Fourth Circuit turned to whether FIFRA provides an adequate remedy for review of the BiOp.  *Id.* at 265.  The Fourth Circuit determined:

> FIFRA does provide for judicial review in the court of appeals of "any order issued by *the Administrator* following a public hearing."  7 U.S.C. § 136n(b) (emphasis added).  But because a BiOp is not an "order issued by the Administrator," the plain language does not provide *statutory* support for an argument that a BiOp issued by the Fisheries Service can be subject to judicial review as part of the FIFRA Administrator's decision.

*Id.* (emphasis in original).

There are significant differences between *Dow Agrosciences* and the circumstances here.  The Fourth Circuit noted that "[t]he procedural posture in this case is different from that in" *Tacoma II*, as in that case "reliance on the BiOp was challenged in connection with the acting agency's final order.  In the procedural posture presented here, where judicial review of a BiOp itself is sought prior to the acting agency's final action, courts have allowed for judicial review of the BiOp, as we do here."  *Id.* at 268 (collecting cases).  Here, similar to *Tacoma II*, FERC has now incorporated the challenged 2012 and 2013 BiOps into its license amendments, and thus the procedural circumstances that could possibly have allowed for judicial review of a BiOp in district court (i.e., no final order from an action agency) no longer exist.  This is in accordance with *Tacoma II*:

> [a]lthough in other contexts a BiOp is subject to independent review in a proceeding in which the agency issuing the BiOp is a party . . . when a BiOp is prepared in the course of a FERC licensing proceeding, the *only* means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals.

*Tacoma II*, 460 F.3d at 76 (internal citations omitted) (emphasis added).  Despite the Plaintiffs' contention, this language is not dictum; under the procedural circumstances found in *Tacoma II* and here, "the *only* means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals."[21] *Id.*

Furthermore, the D.C. Circuit's review of the FERC licensing order in *Tacoma II* included an in depth analysis of the substantive challenges to the BiOps under the APA's § 706 "arbitrary and capricious" standard, concluding that "we reject Tacoma's challenge to the validity of the BiOps, and we find no error in FERC's reliance on them."[22] *Tacoma II*, 460 F.3d at 76-78; 5 U.S.C. § 706.  This contradicts Plaintiffs' contention that jurisdiction in district court is necessary because the Courts of Appeals cannot provide an adequate review of a BiOp and ITS.  The Ninth Circuit has similarly reviewed the validity of a BiOp issued for and relied upon by a FERC license amendment order.  *Cal. Sportfishing Prot. Alliance v. FERC*, 193 F. App'x 655,

---

[21]    Plaintiffs provide *National Wildlife Federation v. NMFS*, No. 3:01-cv-00640-SI, 2016 WL 2353647 (D. Ore. May 4, 2016) in which the district court held that NMFS acted arbitrarily and capriciously when it issued a BiOp to argue "[t]here is neither policy reason nor statutory support for distinguishing that precise nature of NMFS final agency action . . . from the present case, based on the mere fact that the action agencies . . . happened to be the U.S. Army Corps of Engineers and the U.S. Bureau of Reclamation, and the action agency here happens to be FERC."  *Pls.' Suppl. Opp'n* at 6-7.  The Court disagrees.  As discussed, there is ample policy and statutory support for reviewing BiOps issued pursuant to FERC licensing orders in the Courts of Appeals.  Again, "[a]lthough in other contexts a BiOp is subject to independent review in a proceeding in which the agency issuing the BiOp is a party," such as in *National Wildlife Federation*, "when a BiOp is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals."  *Tacoma II*, 460 F.3d at 76 (internal citations omitted).

[22]    The *Dow Agrosciences* Court addressed the *Tacoma II* Court's review of the BiOp, noting that "[w]hile we do not determine here whether to follow this decision, any precedential value it might provide is limited to a discussion of whether a court of appeals could expand the permissive scope of review when reviewing an acting agency's action to include review of the BiOp itself.  But a ruling providing for such an expansion of judicial review does not preclude judicial review of a BiOp under the APA in other procedural circumstances."  *Dow Agrosciences*,  637 F.3d at 268.

49

657-58 (9th Cir. 2006) (reviewing a NMFS BiOp using the "arbitrary and capricious" standard); *cf. Defs. of Wildlife v. EPA*, 420 F.3d 946, 955 (9th Cir. 2005), *overruled on other grounds by Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) (in review of EPA decision, Courts of Appeals have jurisdiction to consider adequacy of BiOp on which EPA relied).   Moreover, NMFS participated as a party in both *Tacoma II* and *Cal. Sportfishing*, further supporting the adequacy of the judicial review process in the Courts of Appeals.   *See Tacoma II*, 460 at 76 (". . . and the participation of the consultant agencies that prepared the BiOps has ensured that the matter is adequately presented").   Section 825l(b) of the FPA provides adequate review of BiOps issued for FERC licensing orders.[23]

The Courts of Appeals would still have jurisdiction under the FPA even if the Court accepted that *Dow Agrosciences* created some kind of jurisdictional ambiguity. "[W]here it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter." *Gen. Elec. Uranium Mgmt. Corp. v. Dep't of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985) (quoting *Denberg v. United States R. Retirement Board*, 696 F.2d 1193, 1197 (7th Cir. 1983)); *see also Nuclear*

---

[23]   The Plaintiffs assert that *United States Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016) illustrates the importance of district court review of final consulting agency actions pursuant to the APA.   *Hawkes* involved the Clean Water Act and whether an approved jurisdictional determination by the U.S. Army Corps of Engineers could be challenged in district court.   136 S. Ct. at 1811.   The Supreme Court found that the determination was a final agency action under *Bennett*, and then concluded there was no adequate alternative to APA review.   *Id.* at 1813-15.   *Hawkes* fails to provide the blow sought by the Plaintiffs.   First, the issue here is not whether a BiOp can be challenged in court, but in which court.   *Hawkes* fails to speak to this, as the case did not involve an exclusive jurisdiction provision such as section 825l(b) of the FPA.   Second, the Plaintiffs' reliance on the *Hawkes* Court's focus on the APA's "presumption of the reviewability of all agency actions" is misplaced.   *See id.* at 1816.   The "presumption of reviewability" centers on the premise that the agency determination will escape adequate judicial review unless the district court exercises jurisdiction.   As discussed, section 825l(b) of the FPA provides adequate review in the Courts of Appeals of BiOps issued for FERC licensing orders.

*Info. & Res. Serv. v. U.S. Dep't of Transp. Research & Special Programs Admin.*, 457
F.3d 956, 960 (9th Cir. 2006) (quoting *Suburban O'Hare Comm'n v. Dole*, 787 F.2d
186, 192 (7th Cir. 1986)) ("If there is any ambiguity as to whether jurisdiction lies
with a district court or with a court of appeals, we must resolve that ambiguity in
favor of review by a court of appeals").  Moreover, as the *Yeutter* Court discussed, "[i]t
is well-established that when two jurisdictional statutes provide different avenues
for judicial review, courts apply the more specific legislation."  887 F.2d at 911; *see
also Northwest Resource Information Ctr. v. NMFS*, 25 F.3d 872, 875 (9th Cir. 1994)
(holding that the explicit jurisdictional requirements of the Northwest Power Act took
precedence over general jurisdiction provision of the ESA).  The caselaw on
jurisdictional ambiguity dictates that section 825l(b) of the FPA preempts the general
procedures for the ESA and APA claims brought under federal question jurisdiction.

The *Dow Agrosciences* Court gave five reasons why "a challenge to the
adequacy of the Fisheries Service's BiOp [was] not inherent to EPA's eventual order
on the reregistration of . . . three insecticides under FIFRA."[24]  *Dow Agrosciences*, 637
F.3d at 265-67.  Despite the Plaintiffs' contentions, those reasons, however valid for
purposes of EPA or APA review, are inapplicable in the unique context of a FERC
review.  The first, third and fourth *Dow Agrosciences* reasons all involve whether the
contents of a BiOp are judicially reviewable.  The Fourth Circuit first determined that

---

[24]     In *City of Tacoma* the Supreme Court held that "[§] 313 [of the FPA] prescribed the specific,
complete and exclusive mode for judicial review of the Commission's orders . . . by the Court of Appeals
which 'shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part' .
. . of all issues *inhering* in the controversy, and all other modes of judicial review."  *City of Tacoma*,
357 U.S. at 336 (emphasis added).

a "BiOp has immediate and independent legal consequences that cannot be changed on later review" of the action agency. *Id.* at 265. As discussed, a Court of Appeals may review FERC's reliance on a BiOp under the arbitrary and capricious standard of the APA. *Tacoma II*, 460 F.3d at 76-78; *Cal. Sportfishing*, 193 F. App'x at 657-58. Regardless of whether FERC decides to adopt the BiOp, a Court of Appeals may find any or all of the determinations in a BiOp to be arbitrary or capricious. This also negates the third and fourth reasons the Fourth Circuit found the BiOp not to be an inherent issue in the action agency's eventual order.[25] *See Dow Agrosciences*, 637 F.3d at 266-67.

The Fourth Circuit's second reason – "if the EPA were to choose not to rely on the Fisheries Service's BiOp, then the BiOp would not be subject to any review in a judicial proceeding challenging the FIFRA reregistration order" – is mooted by FERC's adoption of the 2012 and 2013 BiOps. *Id.* at 266. Fifth, the *Dow Agrosciences* Court found "the plain language of FIFRA's judicial review provisions does not contain 'clear and convincing evidence' that Congress intended FIFRA's judicial review provisions to govern review of a BiOp issued by a different agency." *Id.* at 267. This argument fails when applied to section 825l(b) of the FPA, as it provides the "specific, complete and exclusive mode for judicial review" for FERC licensing orders. *City of Tacoma,* 357 U.S. at 336.

---

[25]   "*Third*, when a court of appeals reviews the EPA's *reliance on a BiOp* issued by the Fisheries Service, the court's review would not be the same as if the district court were to review the BiOp itself directly under the APA." *Dow Agrosciences*, 637 F.3d at 266 (emphasis in original). "*Fourth*, if the EPA were to choose to follow the Fisheries Service's BiOp, any challenge to the EPA's reliance on the BiOp on judicial review could not itself cause the EPA to alter the BiOp." *Id.* at 267 (emphasis in original).

Finally, the Court notes that the Ninth Circuit in *Yeutter* found that failing to grant the Courts of Appeals with exclusive jurisdiction over FERC licensing orders under section 825l(b) of the FPA would result in a "substantial disruption of the statutorily mandated licensing procedure." 887 F.2d at 912 ("After the license applicant had initially fought his way through the administrative proceedings, he would then have to grind through the district court and, almost certainly, through the appeal as of right to the circuit court"). The *Yeutter* Court discussed that "[t]he point of creating a special review procedure in the first place is to avoid duplication and inconsistency. It provides a single and expeditious procedure for resolving licensing disputes. Appellants' theory would resurrect the very problems that Congress sought to eliminate." *Id.*; *see also Harrison v. PPG Indus.*, 446 U.S. 578, 593 (1980) ("the most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal"); *Media Access Project v. FCC*, 883 F.2d 1063, 1068 (D.C. Cir. 1989) (citing *Bond*, 603 F.2d at 936-37) ("coherence and economy are best served if all challenges to a particular agency decision are segregated in particular courts"); *accord Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 740 (1985).

The Court concludes that it lacks subject matter jurisdiction to hear Plaintiffs' challenge to the 2012 and 2013 BiOps issued by NMFS for the FERC license amendments to the Hydro-Kennebec, Lockwood, Shawmut, and Weston dams on the Kennebec River. As it lacks jurisdiction, the Court does not address the remainder of the Federal and Licensee Defendants' summary judgment claims.

## VII.   CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1) (ECF Nos. 18-19).


SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of August, 2016